No 24,469.

BERTHA HOAG et al., *Appellants,* v. THE KANSAS INDEPENDENT LAUNDRY COMPANY, *Appellee.*

### SYLLABUS BY THE COURT.

COMPENSATION ACT—*Death from Pneumonia—Not the Result from Personal Injury by Accident.* An engineer who, as part of his employment, cleaned his boilers, was overcome by excessive heat of the boilers while cleaning them. He was not prostrated, but was disabled. The disability was, his power of physical resistance was reduced so that pneumonia bacteria immediately became active, and he died of pneumonia seven days later. *Held,* death did not result from personal injury ·by accident, within the meaning of the workmen's compensation act.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed May 12, 1923. Affirmed.

*Thomas C. Wilson,* and *Henry Lampl,* both of Wichita, for the appellants.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glen Porter,* all of Wichita, for the appellee.

33—113 KAN.

The opinion of the court was delivered by

BURCH, J.: The action was one for compensation. Judgment was rendered for the defendant on the opening statement of counsel for plaintiffs, and they appeal.

The material portion of the opening statement follows:

"Mr. Hoag was at that time a man of about 54 years of age; he had always enjoyed good health, and up to the time of sustaining this injury was in good health; he had been employed as engineer for a number of years, and had been employed by the Kansas Independent Laundry Company, the defendant herein, for a number of years as engineer; as a part of his employment, and in the line of his duty, he did, on Sundays, go over to the plant of the defendant and clean out or wash out the boilers. I think the evidence will show they have two boilers there, that he was the engineer and prepared these boilers, cleaning them out, for the following week, for the business of the following week.

"The evidence will show that on this particular Sunday, which was July 18, 1920, he went to his duties as was his custom, that he went into the boilers, and the evidence will show that he cleaned both of them out, and that when he came out he was overcome with the heat. The evidence will show that he had never before been overcome by heat in cleaning out these boilers. I do not mean by that he was prostrated right there, but that he was overcome by the excessive heat of these boilers, which had never occurred to him before, and that as a result of which he was physically disabled right then and there, and contracted pneumonia; that is to say, right then and there the evidence will show his powers of physical resistance were reduced to such an extent that the pneumonia germ, known in the medical world as *pneumococci* germ, immediately set in motion, and caused pneumonia, and, on the 25th day of July, 1920, he died."

The opening statement as originally made was amended by counsel for plaintiffs, to withstand the expected motion for judgment, and the amended statement, as it appears above, is to be taken as presenting the plaintiffs' evidence in the case.

Under the Kansas statute, compensation is allowed for personal injury by accident only. (Gen. Stat. 1915, § 5896; Laws 1917, ch. 226, § 27.) The meaning of the word accident was sufficiently discussed in the case of *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793. In that case a workman breaking rock in a quarry with a heavy sledge suffered a pulmonary hemorrhage. In the opinion it was said:

"The circumstances were clearly such that the jury would have been authorized to relate the hemorrhage to blood pressure intensified by vigorous muscular exertion. Relating the hemorrhage to physical exertion, rupture of the pulmonary blood vessels by force from within was as distinctly traumatic

as if the canal had been severed by the violent application of a sharp instrument from without." (p. 773.)

In the case of *Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801, the plaintiff had an unhealed wound on his foot. His work obliged him to wade through foul water. Infection occurred, necessitating amputation. It was held the result produced by contact with the infectious foreign matter in the water constituted an injury which, being an untoward event not expected or designed, was caused by accident. In support of the decision a case was cited in which it was held that typhoid fever, resulting from taking into the system typhoid bacilli contained in polluted drinking water, was attributable to accident.

In the case of *Gilliland .v. Zinc Co.,* 112 Kan. 39, 209 Pac. 658, a workman who had become overheated drank ice water, which caused congestion of the vascular system which killed him within an hour. It was held his death resulted from accident.

It is now generally recognized that what is known as heat stroke is an accident, within the meaning of compensation laws, and frostbite has been placed in the same category.

When personal injury by accident has occurred, compensation may be recovered for disability and disease consequent upon the injury. Thus in the case of *Bidnick v. Armour & Co., ante,* p. 277, the plaintiff suffered a hernia, by accident. He recovered for disability occasioned by milk leg resulting from a surgical operation to relieve the hernia.

The workman was an engineer of experience, and was engineer at this plant, in charge of operating and cleaning the boilers. Therefore he knew about the heat of boilers. On this occasion the heat was excessive. Excessive in relation to what? Either in relation to the usual temperature when the boilers were cleaned, or in relation to ability to withstand the heat incident to cleaning the boilers. In either case, the engineer was inattentive to or misjudged effect of the temperature on his power of endurance. For this reason, what happened to him was unexpected, and if what happened had been an identifiable injury then occurring, the event could have been described as personal injury by accident.

The heat of the boilers overcame the workman. It did not overcome him to the extent of prostrating him, but it disabled him. The disability consisted in weakened power of physical resistance to pneumonia micro-organisms, which at once became active, causing

pneumonia, of which he died seven days later. He did not unexpectedly come in initial contact with pneumonia bacteria by washing the heated boilers, as the workman's wounded foot came in contact with infectious matter in foul water, and the pneumonia bacteria were not intruded into his system by washing the heated boilers, as the workman received typhoid bacilli in drinking water. There was no definite physical lesion producing a specific kind of disability, such as occurs in heat stroke. There was nothing resembling the sudden hyperemia which resulted from· taking ice water into a superheated stomach. There was nothing resembling hernia, bringing a surgical operation and milk leg in its train. Disease-producing bacterial activity was stimulated by a favorable condition; the favorable condition was lowered physical resistance to cause of disease; the lowered physical resistance was produced by work in excessive heat; and in the last analysis the question is whether unexpected reduction of resistance to a bacterial disease, resulting from performing work under some misjudged or ignored circumstance or condition, constitutes personal injury by accident. The court is of opinion the question should be answered in the negative.

Pneumonia may follow a surgical operation, and may follow the breaking of a limb. The shock lowers vitality to such an extent that militancy of the bacteria prevails. Lowered vitality may also come from exhaustion from heavy work, from fatigue from long hours of work, and from a great variety of other causes which expose a workman to pneumonia and other diseases. The result is, there is a twilight zone between clear personal injury by accident, which is covered by the compensation act, and sickness, which is not covered. The subject is illustrated by one of the cases cited by the plaintiffs. On the evening of August 24, a workman danced, became heated, and then chilled. On the afternoon of August 26, he strained his back. The next day he went to bed, and on September 6 he was taken to a hospital, where he displayed symptoms of pneumonia of two or three days' duration. His vitality was lowered, his condition debilitated, and he was delirious. He died on September 9. The question was whether or not the pneumonia was caused by the hurt to his back. There was contradictory evidence on the subject, and it was held the industrial accident board was authorized to find the fact. (*Bayne v. Riverside Storage, Etc., Co.,* 181 Mich. 378.) In this case it is proposed to dispense with hurt, and make debility alone stand for injury, in the sense of the statute.

Hoag v. Laundry Co.

In the case of *Linnane v. Ætna Brewing Co.*, 91 Conn. 158, compensation was sought for death from pneumonia caused by exhaustion induced by overwork under unusual conditions. The medical testimony was summarized in a finding of fact as follows:

"They agree that pneumonia is caused by the pneumo-coccus germ, which is inhaled and present in a considerable percentage of persons in apparently normal health. The aforesaid physicians agree that the deceased's exhausting walk from his home immediately after arising in the middle of the night, his arduous work for twelve hours, following sooner than ordinarily upon his preceding shift, his working in wet garments, and the frequent changes of temperature between the boiler room where he often stood before the open doors of the furnace and the open air where the ashes and clinkers were dumped, created conditions in the system of the deceased which resulted in the pneumonia from which he died. The pathology of this disorder is that when unusual conditions arise in the human system decreasing its powers of resistance, the pneumo-coccus germ becomes active." (p. 159.)

In the opinion the court said:

"As was pointed out in the Miller case, the phrase 'personal injury' is used in the act in its popular sense of an accidental bodily injury, and unless the Miller case be ignored and all practical distinction between bodily injury and disease abandoned, we must recognize the fact that in common speech and understanding a bodily injury, whether manifest to the senses at the time it is sustained, or subsequently revealed by functional disturbance, is always assignable to some definite part or organ of the body, and when caused by accident is always sustained at the time of the accident, or at least during the time within which the accidental condition is operative. An accidental bodily injury may, therefore, be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked-for mishap or an untoward event or condition not expected. The concurrence of accident and injury is a condition precedent to the right to compensation.

"On this record, the unusual weather conditions, or the consequent untimely and prolonged hours of labor, or both, may be said to supply the element of an untoward and unexpected condition of the employment. The direct and contemporaneous result of this accidental condition was exhaustion, and the record, therefore, shows that the decedent was accidentally exhausted on December 14. It is clear, however, that exhaustion, although accidentally incurred, is not in and of itself a bodily injury, either according to common speech and understanding or according to the above definition." (p. 162.)

No hard and fast rule for the decision of cases falling within the zone referred to can be stated. Each one depends on its own facts. It may be said, however, that generally, when the event reduces to the elements stated above, the case is not one of personal injury by accident.

It would not be profitable to undertake a review of the decided cases. The principles of statutory interpretation are fairly well settled and, as indicated, the decision in each case depends on the peculiar facts involved.

The judgment of the district court is affirmed.