No. 24,848.

L. E. TAYLOR, *Appellee,* v. SWIFT & COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. WORKMEN'S COMPENSATION ACT—*Action Barred by Statute of Limitations.*
Under the workmen's compensation act, a workman's claim against his em-
ployer for injuries sustained in the service of the latter gives rise to a cause
of action "on a liability created by statute" which is barred in three years
under the statute of limitations.

2. SAME—*Construction of Pleadings.* Where a demurrer is sustained to a pe-
tition on the ground that it does not state a cause of action, and the peti-
tion is thereafter amended by the introduction of new and independent al-
legations which by liberal interpretation may be conceded to state a cause
of action, such amendment does not relate back to the time of the filing of
the original petition so as to save the cause of action against the bar of the
statute of limitations.

3. SAME—*Necessary Facts to be Shown by Injured Workman.* Before a work-
man can establish a claim for compensation against his employer under the
workmen's compensation act, it must be shown that an accident transpired,
that some mishap, some untoward and unexpected event occurred, arising
out of and in the course of his employment, which occasioned the injury.

4. SAME—*Injuries Did Not Arise from Accident Within Meaning of Compen-
sation Act.* A workman was engaged in working in and out of a meat-cool-
ing room. The room inside was cold; outside the weather was hot. The
alternating heat and cold brought on pain in his spine and limbs which
forced him to quit work before the day's work was done. Next day he felt
unable to work and the following day he was paralyzed. *Held,* that the
plaintiff's affliction did not arise from an accident within the meaning of the
compensation act.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER,
judge. Opinion filed October 6, 1923. Reversed.

*Russell Field,* of Kansas City, Mo., for the appellant.
*W. W. McCanles,* of Kansas City, for the appellee.

The opinion of the court is delivered by

DAWSON, J.: This was an action to enforce a claim for compensa-
tion for alleged injuries sustained by plaintiff through exposure
while working in and out of defendant's meat-cooling plant. The
alleged exposure occurred on September 26, 1917. The action was
originally begun on September 24, 1920. It was removed to the
federal court and there dismissed without prejudice on April 12, 1921,

and this action was begun July 5, 1921. In the petition filed by plaintiff on July 5, 1921, he attempted to state a cause of action as follows:

"Plaintiff says that on the 26th of September, 1917, he received an injury by accident arising out of and in the course of his employment while working for the defendant. That he was required in the course of his employment to work in cold refrigerator cars and to be on the outside of the cars at times and in the cold department of the cars at other times. That said refrigerator cars were kept at a freeing point, to wit: about 30 to 32 degrees. That on account of working out and in said cars the said plaintiff accidentally contracted a severe case of cold and LaGrippe and as a result of contracting said case of cold and LaGrippe the plaintiff became paralyzed in both of his legs and from his hips down. That the injuries which he received by reason of said LaGrippe and cold were accidental and was a result of his working in said refrigerator cars as aforesaid."

Defendant filed a motion to make this petition more definite and certain by requiring plaintiff to state the nature and extent of the alleged accident, and by setting forth the facts constituting it. This motion was sustained. Thereupon plaintiff amended his petition by inserting the words "as follows" after the word "defendant" at the end of the first sentence in the paragraph of his petition quoted above, so that as amended, it read:

"Plaintiff says that on the 26th of September, 1917, he received an injury by accident arising out of and in the course of his employment while working for the defendant, *as follows:* That he was required in the course of his employment to work in cold refrigerator cars," etc.

Defendant's demurrer to this petition was sustained on October 15, 1921, and on October 20, 1921, plaintiff filed an amended petition, the material part of which reads:

"Plaintiff says that on the 26th day of September, 1917, he received an injury by accident arising out of and in the course of his employment while working for the defendant, as follows:

"That he was required in the course of his employment to work in cold refrigerator cars and in and about said cooler and to be on the outside of cars at times and in the cold department of cars at other times and also said cooler in which he was working as aforesaid, that said refrigerator cars and cooler were kept at a freezing point, to wit: about 30 to 32 degrees. That in the due course of his employment he was required at times and particularly on the 26th day of September, 1917, was required to lift heavy calves, placing them on scales and taking them off scales for the purpose of weighing them. That on the aforesaid date and while so lifting said heavy calves he strained himself and became overheated and as a result of said working in the cold as aforesaid he contracted a severe case of cold and LaGrippe. That said

cold and LaGrippe so contracted as aforesaid became so severe that it settled in both of his legs and he became paralyzed in his legs from his hips down. That said injuries which he received by reason of said LaGrippe and cold contracted as aforesaid were accidental and were a result of his working in said cold places as aforesaid."

Defendant's answer traversed all the allegations of plaintiff's petition, pleaded various defenses, and invoked the statute of limitations.

Plaintiff's reply, in part, alleged:

"Plaintiff further denies that the statute of limitations has run in this action. Plaintiff says that on or about the month of September, 1920, plaintiff filed a petition in the above entitled case claiming compensation for an injury by accident arising out of and in the course of plaintiff's employment for the defendant. That the defendant filed a petition in removal and took same to the United States district court. That the plaintiff dismissed said action in said court without prejudice, on April 12, 1921, and that on July 12, 1921, less than one year thereafter, again filed the petition in the present action."

The cause was tried before a jury. The testimony of plaintiff concerning his alleged accident and injuries, in its main features, reads:

"Q. . . . What did you do or help do on the morning of the day that you were injured? A. I helped to lift the lambs and also the veal and get them on the main rail.

"Q. Can you tell the jury about how much those lambs and veal weigh? A. The veal weighed from fifty pounds to five hundred, and the lambs usually weigh about fifty pounds. The veal averaged from—well, they run from fifty to five hundred pounds.

"Q. Any time during that day did you—you may state whether or not you noticed anything in connection with the handling of those veal or lambs? . . .

"A. I began feeling bad about noon, pains through my spine and through my limbs. . . .

"Q. Just prior to your feeling bad in your spine and limbs, or wherever it was, what had you done? A. I had lifted the lambs and the veal and getting out the orders in general. And also scaling them.

"Q. What was the first thing you noticed? A. Pains through my spine and down the backs of my legs.

"Q. I wish you would describe, if you can, a little more definitely the nature of those feelings you had in your back. A. Well, it felt as if a severe cold—if a person knows how a severe cold feels.

"Q. Did you lift any of these veals yourself? A. I helped to lift them. I helped to lift the veals, myself and another man.

"Q. I see. Now, how did that feel with respect to being heavy, to you, at that time? A. They felt rather heavy.

"Q. If you can remember of any particular time of lifting any particular lamb or veal there, that affected you, I wish you would tell the jury. A. I remember feeling so badly about ten-thirty that I went into the office, and I never lifted any more after that. . . .

"Q. Now where were these calves, these veals that you were lifting, taken from? A. From the sheep cooler, the mutton department. . . .

"Q. How far did you take them? A. From the cooler over the scales.

"Q. And how far is that? A. From the back end of the cooler over the scales—about seventy feet, I think.

"Q. What was the condition of the weather outside at that time? A. It was warm at that time.

"Q. What was your condition with respect to perspiring or being hot? A. When I would go on the beds, I would perspire quite a bit, going on to the beds, and it is animal heat out there, you know—the temperature is very high.

"Q. And from the animal beds where would you go? A. Back into the cooler.

"Q. Well, now, after you—you told about your feeling at ten-thirty. The rest of the day what was your condition? A. Very sluggish and worn out and exhausted.

"Q. What particular parts of your body hurt you? A. From the small of my back down the spine, and the muscles in my legs.

"Q. How long had you worked that day? A. Until about four-thirty in the afternoon. . . .

"Q. Why did you quit at four-thirty? A. Because I didn't feel like working.

"Q. Where did you go after quitting? A. Went home.

"Q. And when you got home what did you do? A. Went to bed.

"Q. And how long did you remain there? A. Well, I got up the next morning, although I couldn't leave the house. I was up most of that day, just lying around, you know.

"Q. What was the condition of your back and legs that day? A. They pained me and ached.

"Q. Where? A. In the spine, the small of my back and in my legs.

"Q. The next morning what did you notice, if anything? A. The next morning I became paralyzed.

"Q. In what part of your body or limbs? A. In my limbs.

"Q. Your legs? A. Yes, sir.

"Q. And have you been paralyzed ever since? A. Yes, sir."

Defendant admitted that plaintiff's condition was one of total disability, but not as a result of an accident.

Verdict, special findings and judgment were entered for plaintiff.

Defendant assigns various errors, chief of which relate to the statute of limitations and the demurrer to plaintiff's evidence.

As to the first of these, it will be noted that in the judgment of the trial court, a cause of action was not stated in plaintiff's amended petition on file on October 15, 1921. Its material recitals were iden-

tical with those of the petition originally filed in the district court of Wyandotte county on September 24, 1920, which case was later removed to the federal court and dismissed, and it was identical with the petition in the new action begun in the district court of Wyandotte county on July 5, 1921, except as amended by the insertion of the words "as follows" above indicated. It should therefore be noted that it was the judgment of the trial court that on October 15, 1921, *four years* and *19 days* after the alleged accident arose, no cause of action had yet been stated. The last amended petition, which the trial court held sufficient to state a cause of action, was filed on October 20, 1921, four years and *24* days after it arose. Of course plaintiff had a year to commence an action after its dismissal without prejudice in the federal court, but here we have a case where no cause of action had ever been stated in any court, state or federal, until more than four years after it arose. We are, of course, well aware of the rule of pleading that where a cause of action is merely stated uncertainly or insufficiently, the petition may be amended to plead sufficiently what had theretofore been defectively pleaded and the amendment will relate back to the time the original petition was filed and save the cause of action against the bar of the statute of limitations. But that is not the situation here. Plaintiff for the first time on October 20, 1921, in his last amended petition introduced the allegation that on September 26, 1917, while lifting heavy calves he strained himself, which was altogether a new and independent cause of action from the one attempted to be stated in the original and subsequent petitions filed prior to October 20, 1921.

In *Railway Co. v. Bagley*, 65 Kan. 188, 196, 69 Pac. 189, this court said:

"Will the filing of the petition which states no liability against the defendant arrest the statute? Or, rather, did the filing of an amendment which stated a cause of acton, relate back to the filing of the original petition wherein no cause of action was alleged? Our code makes liberal provsions for amending pleadings both in form and in substance, but no amendment is permissible which changes substantially the claim or defense, or which introduces a new claim or defense. (Civil Code, sec. 139; Gen. Stat. 1901, sec. 4573.) So it was held in *A. T. & S. F. Rld. Co. v. Schroeder*, 56 Kan. 731, 44 Pac. 1093, that a new and distinct cause of action, barred by the statute, could not be engrafted on a petition by way of amendment so as to deprive the defendant of the defense of the statute of limitations."

In *Railroad Co. v. Sweet*, 78 Kan. 243, 96 Pac. 657, the action originally begun was for the negligent setting out of a fire at a cer-

tain time and place. Later, after the statute of limitations had run plaintiff amended his pleadings by alleging that his damage was caused by another and different fire. It was held that the amendment set out a new and distinct cause of action. Here the original cause of action alleged was for injuries sustained from exposure while working in and out of a cooler. The amendment stated a new and independent cause of action founded on the alleged fact that plaintiff strained himself while lifting heavy calves. This new and independent matter introduced by the amendment filed on October 20, 1921, if construed to state a cause of action, was "an action upon a liability created by statute;" within the second clause of section 17 of the civil code (Gen. Stat. 1915, § 6907), and was barred in three years. ·

This might render further discussion of this case unnecessary, but the court also instructs the writer to call attention to the facts alleged and testified to by defendant, so as to show that aside from the bar of the statute the case was not one within the workmen's compensation act. That statute awards compensation for accidents and consequent injuries arising in the course of the workman's employment and because of it. But there must be some accident, some mishap, some untoward, unexpected event arising out of and in the course of the employment from which the injury is occasioned. (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Hoag v. Laundry Co.*, 113 Kan. 513, 215 Pac. 295.) Here there was no accident. The exposure caused by working in and out of a cooler or refrigerated wareroom is undoubtedly hard on the human constitution, it may wear down and gradually weaken a workman's powers of endurance and render him more liable to various diseases, including possibly transverse myelitis as contended for in this case by plaintiff, but such work and such exposure, although regrettable consequences flow therefrom, do not constitute an industrial accident within the meaning of the compensation act. Even in the course of the trial below it was conceded that this action was not one seeking a recovery for an occupational disease. The record reads:

[Counsel for defendant, stating his objection to a question in cross-examina tion of a physician] "The plaintiff is not seeking, apparently is not seeking a recovery for any occupational disease."

[Counsel for plaintiff] "Certainly not, but we claim and have claimed that we are—we are claiming and have claimed that this arose from his over-exertion and from exposure. That is the case. That is our pleading, and that is our testimony."

In *Hoag v. Laundry Co.*, supra, a workman in cleaning boilers in a laundry was overcome by the excessive heat of the boilers and his physical endurance was thereby reduced so that he contracted pneumonia and died seven days later. It was held that his death was not the result of a personal injury caused by accident within the meaning of the compensation act. It was there said:

"Lowered vitality may also come from exhaustion from heavy work, from fatigue, from long hours of work, and from a great variety of other causes which expose a workman to pneumonia and other diseases. The result is there is a twilight zone between clear personal injury by accident, which is covered by the compensation act, and sickness which is not covered." (p. 516.)

In *Linnane v. Ætna Brewing Co.*, 91 Conn. 158, it was said:

"Compensation is not awarded, under our workmen's compensation act, for death or incapacity due to disease, unless the disease be the direct result or natural consequence of an accidental bodily injury; in other words, a 'personal injury' within the act, must involve both an accident and bodily injury as distinguished from disease. . . .

"An accidental bodily injury may be defined as a localized abnormal condition of the living body directly and contemporaneously caused by accident; and an accident may be defined as an unlooked for mishap or an untoward event, as an unexpected condition." (Syl.)

On the foregoing plain and obvious grounds the plaintiff must therefore fail. The cause of action was barred under the three years' statute of limitations at the time the last amended petition was filed; and the facts themselves as shown by plaintiff's evidence did not establish any accident sustained by plaintiff on September 26, 1917, which caused him some bodily injury as distinguished from sickness or disease such as is defined and contemplated by the workmen's compensation act.

Reversed with instructions to enter judgment for defendant.