No. 25,484.

THERESA CHOP, *Appellant,* v. SWIFT & COMPANY, *Appellee.*

SYLLABUS BY THE COURT.

WORKMEN'S COMPENSATION—*Occupational Diseases—Accidental Injuries.* A worker in a packing plant was employed in carrying links of cold sausage from one part of the plant to another. She picked up the links with her right hand and draped them on her left arm, taking them to a carrier. The sausages were very cold and the temperature of the room was low. After a time she felt a numbness and also pains in her arms, which she first attributed to rheumatism, and this was followed by what the physicians termed musculospiro paralysis, or wrist-drop, due, they said, to exposure to cold, and for this an award of compensation was asked. *Held,* that the injury cannot be regarded as an accidental one within the meaning of the workmen's compensation act.

Appeal from Wyandotte district court, division No. 1; EDWARD L. FISCHER, judge. Opinion filed March 7, 1925. Affirmed.

*George H. West,* and *P. W. Croker,* both of Kansas City, for the appellant.

*Russell Field,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This case involves the question whether an employee of a packing company who suffered what is termed musculospiro paralysis or wrist-drop while engaged in her work in the packing plant, is entitled to an award under the workmen's compensation act.

Theresa Chop was carrying casings stuffed with frozen meats from one part of the plant to another. The plan was to lift the sausages with her right hand and drape them on her left arm to the number of from fifteen to twenty-four links, and these were carried to another part of the plant and placed on a carrier. The links of sausage were quite cold and the temperature of the room was low. Her arm became so cold she said that there was a numbness, and buckets of warm water had been provided into which she would thrust her left arm after the removal of the sausage, and then would return for another load. After she had been at work there for thirty days, and on April 26, 1921, she testified that she had pains in her arm, which she first called rheumatism. She called on Doctor Faust, who treated her, and afterwards noticed what is called wrist-drop. At first she complained of pains in both

arms, and had a partial wrist-drop in her right arm as well as her left. He diagnosed the affliction as one of musculospiro paralysis, and from an examination previously made he stated that the paralysis continued and was about the same as when he first treated her. His theory was that the exposure to cold was the cause of the paralysis, but that the putting of her hands in warm water would not produce the wrist-drop. Doctor Nesselrode, another physician, testified that he had treated her, and he came to the conclusion that the exposure and subjecting her arm to different degrees of coldness was a factor in causing what he called neuritis. He stated that the disease might be caused by a direct injury or trauma to the nerve or by chronic infection or by exposure to extreme cold. An examination, he said, showed no injury to the bone that made pressure upon the nerve, and thus one of the causes was eliminated. He did find that she had diseased tonsils, and thinking there might be infection, removed them, but the operation, he stated, did not relieve the paralysis, and upon this and her history of the case he was forced to conclude that the exposure to cold was a factor in causing her trouble. He added that putting her hands in warm water would have nothing to do with her injury or weakness. It appears that she has since worked in two other packing houses, and in an application for insurance in an employees' mutual benefit fund at the Wilson plant, she represented that to the best of her knowledge and belief she was in good physical condition and free from defects.

We think the trial court rightly concluded that the injury was not compensable under the workmen's compensation law. The act does not provide for occupational diseases, but only for injuries by accident sustained in the course of employment and arising out of it. Was there an accident or was the injury the result of an accident? There was no force or bodily injury of accidental origin. According to the testimony, the injury was the consequence of coldness which resulted in exhaustion and low vitality culminating in the disease of paralysis. It brought on a weakened condition of resistance to disease, and was somewhat like catching cold—something which results from exposure and finally develops into a disease, and might occur in any case where there was exposure. It was not an unexpected and untoward event, but, as the physicians said, was something which may follow exposure and render the employee liable to diseases like pneumonia, neuritis or

paralysis, and cannot be regarded as an accidental injury as distinguished from a disease. The case appears to be within the authority of *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516. There a claim for compensation was made by an employee in a packing plant for an injury arising through exposure to cold while working in a cooling room and in refrigerator cars which were kept at the freezing stage. He contracted a severe cold and became paralyzed in both of his legs from his hips down, and it was held that his affliction did not arise from an accident within the meaning of the compensation law. It was said:

"But there must be some accident, some mishap, some untoward, unexpected event arising out of and in the course of the employment from which the injury is occasioned (citing cases). Here there was no accident. The exposure caused by working in and out of a cooler or refrigerated wareroom is undoubtedly hard on the human constitution; it may wear down and gradually weaken a workman's powers of endurance and render him more liable to various diseases, including possibly transverse myelitis, as contended for in this case by plaintiff; but such work and such exposure, although regrettable consequences flow therefrom, do not constitute an industrial accident within the meaning of the compensation act.". (p. 436. See, also, *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Hoag v. Laundry Co.*, 113 Kan. 513, 215 Pac. 295.)

Judgment affirmed.