No. 30,744.

Joseph Wright, *Appellee,* v. L. R. Keith and London Guarantee & Accident Company, Limited, Insurance Carrier, *Appellants.*

(15 P. 2d 429.)

Opinion filed November 5, 1932.

*Chester I. Long, Claude I. Depew, W. E. Stanley, William C. Hook* and *James T. Klepper,* all of Wichita, for the appellants.

*Glenn V. Banker* and *Oscar Ostrum,* both of Russell, for the appellee.

The opinion of the court was delivered by

Hutchison, J.: This is a compensation case, and the appeal is by the respondent from a judgment in favor of the workman for injuries sustained by him on account of the accidental freezing of his right foot while engaged with other workmen in erecting for respondent an oil-well derrick.

The first point urged by the appellant is that the injuries sustained

were not the result of an accident, and that they did not arise out of and in the course of the employment.

The trial court made very full and complete findings of fact and three conclusions of law, the first of which is as follows:

"The freezing of claimant's toes and foot, resulting from the combined effect of Buerger's disease and of the wet, muddy, slushy and cold condition to which the foot was exposed during the greater part of the day, was an accident arising out of and in the course of employment of the claimant."

The following is a brief abstract of the facts as found by the trial court, from which the first conclusion of law is drawn, although some of the findings are claimed by the appellant to entirely lack support by competent evidence: The oil-well derrick was being erected by the respondent near Gorham, in Russell county, on land plowed and planted to wheat in the fall of 1930. On December 3, 1930, at 8 a. m., the ground where the work was being carried on was frozen over to a depth of about one-half inch. Within two hours thereafter this frozen crust was thawed out and from then on until about 4 p. m., when the ground froze over again. The temperature that day at the place where the claimant was working ranged from 28 degrees F. to 39 degrees F. The claimant's work required him to walk around and stand in this mud and slush for such a large proportion of the time that the water penetrated his shoes, and his socks and his feet became wet and cold from the constant contact with the muddy, slushy soil. His work during the greater part of that day required him to be in the slush and mud to an appreciably greater extent than any of his fellow workers, particularly after the noon hour, and to a greater extent than the average workman in other lines of industry and other ordinary lines of labor in the same vicinity. The climate and soil conditions under which the claimant was working at that time were not peculiar to the oil industry, but were in all respects similar to what any outdoor workman might expect to encounter at that time of year and in that vicinity. Complainant ceased to have any feeling of cold or pain in his right foot while at his work about 4 p. m., due to the freezing caused by impaired circulation and by the slush and mud in which he had been working prior to that time, followed by a fall of temperature below freezing. The big toe and the one next to it, including the lower side of the instep, became frostbitten and frozen. The big toe and the toe next to it were observed that evening to be discolored. Claimant continued working at the same work and place for several

days and called a physician December 16, and the great toe and the one next to it on the right foot, after regular treatment by the physician until February 2, 1931, were amputated. For some time prior to December 3, 1930, the claimant had Buerger's disease in his right foot and the toes thereof, especially the two that were later amputated, and the amputation was a necessary result of the Buerger's disease and the freezing on December 3.

Was this freezing an accident within the meaning of the word as used in the workmen's compensation statute, and if so, did it arise out of and in the course of the employment? R. S. 1931 Supp. 44-501 makes the provisions of the workmen's compensation law applicable to "personal injury by accident arising out of and in the course of employment." In the recent case of *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, it was said that the six elements of an accident as defined in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; and *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418, were "(1) undesigned, (2) sudden, (3) unexpected, (4) usually of an afflictive or unfortunate character, (5) often accompanied by a manifestation of force, and (6) time, place and circumstance." At the same time we should recognize that the peculiar circumstances make an event an accident when under usual and ordinary circumstances it might not have been such. In the case of *Monson v. Battelle*, 102 Kan. 208, 170 Pac. 801, it was said in the opinion that the infection of an existing wound by contact with foreign matter seems to be within the ordinary meaning of the term—an unlooked-for and untoward event which is not expected or designed. An injury may be by accident, although it would not have been sustained by a perfectly healthy individual, and if an existing disease is aggravated by accident or injury, compensation must be paid for the resulting injury. The overflowing of the yards with flood water was the accident where the claimant was working, and through which water he had to pass with his diseased foot, from which it became infected.

The Gilliland case, above cited, was where the workman was swinging a sixteen-pound sledge and after doing so suffered a pulmonary hemorrhage, and it was held to have been an accident from which he died.

In the case of *Barker v. Shell Petroleum Corp.*, supra, where the workman was performing his work by riding on a four-wheeled maney drawn by a tractor over the ends of railroad ties and rails

and loose four-inch pipe, thereby jarring, jolting and jerking him so as to seriously injure him, it was held to be an accident.

The case of *Mathis v. Ash Grove L. & P. C. Co.*, 127 Kan. 93, 272 Pac. 183, was where a workman was killed by a stroke of lightning while walking from one point of duty to another along a railroad track near a high-power electric line and a telephone line, where the lightning was more severe than elsewhere, and it was held to be an accident within the meaning of the statute.

It will readily be observed that in each and all the above cases there was plainly or conspicuously one or more of the six elements contained in the definition of an accident, as above given—sudden, unexpected, undesigned or accompanied by force. None of these are conspicuous in the freezing incident in the instant case. The climatic condition was quite normal for December 3, with a temperature from 39 degrees to 28 degrees. There was no storm, flood or other sudden or unusual event. It was only normal for the top of the ground in a wheat field at that season of the year to freeze and thaw within that range of temperature. It was no accident that the slushy ground commenced that day to freeze about 4 o'clock; neither would it be an accident if a foot or hand not sufficiently protected might do the same. The situation appears to lack all six elements contained in the definition of an accident.

In the case of *Chop v. Swift & Co.*, 118 Kan. 35, 233 Pac. 800, a workman in a packing plant carried links of cold sausage, picking them up with the right hand and draping them over the left arm. They were very cold and the temperature of the room was low. From this exposure to cold she suffered a sort of paralysis, called wrist-drop, due to the constant exposure to cold, but the court held the injury could not be regarded as an accidental one and denied compensation. Another very similar case is *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516, where a workman in the same kind of a plant worked in and out of a meat-cooling room. Inside it was very cold, and outside the weather was hot. The alternating heat and cold produced pain in his spine and limbs and later paralysis, and it was held "that the plaintiff's affliction did not arise from an accident within the meaning of the compensation act." It was further held in that case that—

"Before a workman can establish a claim for compensation against his employer under the workmen's compensation act, it must be shown that an ac-

cident transpired, that some mishap, some untoward and unexpected event occurred, arising out of and in the course of his employment, which occasioned the injury." (Syl. ¶ 3.)

This claimant may have been more in the slush and mud than the other workmen engaged with him, and possibly thus exposed to a greater extent than the average workman in other lines of industry, as the trial court found, but if it is a hazard peculiar to the industry in which he is engaged it is to be anticipated when he seeks and accepts the employment. The claimant here was not an amateur at the business, for he had followed such work for twenty-two years in all kinds of weather. The work and surroundings are described by him and his fellow workmen as being not much different from that of other outdoor workers, as on farms, roads or ditches. The climatic conditions are not peculiar to vocations or arise out of the employment, but are the same for all outdoor employment in the same neighborhood at the same time. Ordinary climatic conditions are not hazards in themselves and are not peculiar to any industry so as to be said to arise out of such employment. This is strongly shown in the case of *Savage v. City of Pontiac,* 214 Mich. 626, where a fireman in fighting a fire on a very cold day died as the result of exposure to ice freezing on his neck and thus injuring his spinal cord. There it was held it was not an accidental injury because it was received through natural causes to which others in similar employment were subject. Two Michigan cases are quite in point, viz., *Sherman v. Flint Spring Water Ice Co.,* 229 Mich. 648, and *Hagrove v. Arnold Construction Co.,* 229 Mich. 678, where two workmen got their mittens wet, but continued to use them at work on extremely cold days, thereby subsequently freezing their hands, and it was held the freezing was not accidental within the meaning of the statute.

Appellee cites *State, ex rel. Virginia & R. L. Co., v. District Court,* 138 Minn. 131; *Ellington L. Co. v. Industrial Comm.,* 168 Wis. 227; *Quick v. Illston Ice Co.,* 186 N. Y. Supp. 690, and *Gibbons v. United Electric Railways Co.,* 48 R. I. 353, all of which apparently hold a freezing to be an accident. Most of them, however, seem to have occurred under very unusual and peculiar circumstances; one where the workman had been shoveling snow off a street-car track for more than twenty-four hours without stopping; another where a workman handled timber with his hands coming in contact with

snow on a severely cold day, thereby freezing his thumb; another where a woodman went to work in the wrong place and consequently worked harder and faster than ordinarily, and became overheated and susceptible to the cold, and his feet were frozen; and another, where a workman froze his hand while floating ice when the thermometer registered fourteen degrees below zero. We are not persuaded by these cases of such very unusual circumstances and surroundings that under the ordinary and usual climatic condition of a mild December day with a minimum temperature of twenty-eight degrees, the freezing of even a diseased foot is an accident within the meaning of the workmen's compensation statute. We would have less difficulty in concluding, as the trial court did, that if an accident it might properly be said to have arisen out of and in the course of the employment, but such conclusion is not here necessary when we fail to concur with the trial court in his conclusion that the freezing was an accident.

The judgment is reversed with direction to render judgment for defendant.

HARVEY, J., dissenting.