No. 36,123

Lon Murphy, *Appellee*, v. I. C. U. Construction Company and The Maryland Casualty Company (Insurance Carrier), *Appellants.*

(148 P. 2d 771)

Opinion filed May 6, 1944.

*Walter L. McVey,* of Independence, argued the cause, and *O. L. O'Brien,* of Independence, was on the briefs for the appellants.

*Warren B. Grant,* of Independence, argued the cause for the appellee.

The opinion of the court was delivered by

Hoch, J.: This is an appeal from an award under the workmen's compensation act based upon the freezing of claimant's fingers while helping to dig a ditch. The only question raised is whether the claimant suffered an "injury by accident arising out of and in the course of employment." (G. S. 1935, 44-501.)

Lon Murphy, the claimant, was sixty-six years old. For several years he had worked as a janitor doing inside work, but had been unemployed for six months or more prior to the date of the injury. On January 24, 1943, he was hired as a laborer by the I. C. U. Construction Company, respondent, which was doing work under gov-

ernment contract on an army air base at Independence, Kan. He reported for work the following morning, January 25, and went to work at 8:30 with a gang of men, digging ditches for foundations for buildings. He was using a sharpshooter, pick and shovel. He worked until five-thirty in the evening, with thirty minutes off at noon. After quitting work he rode back to town in a closed car. After he reached home and put his hands in cold water he discovered that fingers on both hands had been frostbitten. He called a doctor the next day and was sent to the hospital for treatment, and was there from January 28 to January 30. About two weeks later he was again hospitalized for a period of about two weeks.

In May, 1943, he filed application for compensation. On August 24, 1943, the commissioner made an award in his favor based on partial loss of use of the index, middle and ring fingers of the right hand. The award covered a period of forty-three and a half weeks at the rate of eighteen dollars a week, together with further medical and hospital treatment in an amount not to exceed five hundred dollars, and commissioner's and reporter's fees. Upon appeal to the district court the findings and award of the commissioner were affirmed and this appeal followed.

Appellants make two contentions; *first,* that there was no evidence that the freezing of appellee's hand took place while he was at work; *second,* that frostbite does not constitute an "injury by accident" within the meaning of our compensation act.

The first contention is not strongly urged and will be treated briefly. Appellants say that appellee was warmly dressed while at work, did not feel anything wrong while at work, and that they "are inclined to think that he would come nearer freezing his hands on the way home after he had stopped using them than he would on the job while using the pick and shovel or sharpshooter and thus in a way submitting his hands to exercise." This was clearly a question of fact. Claimant testified that he rode out to the air base in a bus, reported to the foreman at the company's office building, and was taken from there to the place of work by the foreman in a truck, together with other workmen. In the evening he rode home in a closed car. On this question we need not further review the evidence. There was ample evidence to support the finding that claimant's injury was suffered during the hours he was working. Unlike the trial court which reviews the record as a trier of facts, our jurisdiction is specifically limited to questions of law (see pro-

viso in G. S. 1935, 44-556) and we are only concerned with evidence which supports or tends to support the findings. (*Thompson v. Swenson Construction Co.*, ante, pp. 49, 56, 145 P. 2d 166; *Goss v. McJunkin Flying Service*, 157 Kan. 684, 143 P. 2d 659.)

Appellant's second and principal contention is that appellee did not suffer an "injury by accident." There is a marked conflict upon the question of whether injury suffered from heat or cold due to weather conditions is to be classed as an accident within the meaning of workmen's compensation acts. After examining the textbooks, the cases cited by both parties, and many others, we have no hesitancy in saying that the great weight of authority is that frostbite is such an "accident," at least, if the conditions from which it results are of a severe and unusual character and the workman by virtue of the circumstances under which he works is subjected to an unusual hazard not common to workmen generally in the locality. The rule is variously phrased, but the same idea occurs repeatedly in the cases from many jurisdictions. The same rule is applicable to injuries from exposure to the elements whether it be heat or cold. We find such expressions as the following: "injurious consequences resulting from exposure to a sudden, extreme and exceptional degree of cold"; "extraordinary exposure to cold"; "it is necessary that it appear that the working conditions were unusual"; "peculiarly exposed to the risk of such injury" (71 C. J. 622, 626, 627, 759; 28 R. C. L. 795, 796.) In an annotation in 13 A. L. R., pages 974 *et seq.*, on the subject it is stated:

"The rule is generally recognized, however, that if an employee, by reason of his duties, is exposed to a special or peculiar danger from the elements—that is, one greater than other persons in the community—and an unexpected injury is sustained by reason of the elements, the injury constitutes an accident arising out of and in the course of the employment."

The same general rule is restated in supplementing annotations in 13 A. L. R. 974; 16 A. L. R. 1038; 25 A. L. R. 146; 40 A. L. R. 400; 46 A. L. R. 1218; 53 A. L. R. 1084; 83 A. L. R. 234-240. (For cases subsequent to 83 A. L. R., see A. L. R. Blue Book, 1943 Revision, pages 795-797.)

In 1 Schneider's Workmen's Compensation Law, 586, 589, numerous cases are summarized with reference to frostbite or freezing from exposure. The holding in most of the cases there cited is in line with the general rule.

A few of the cases most frequently cited may be briefly noted.

In *Kaiser v. Indus. Comm.*, 136 Ohio St. 440, 26 N. E. 449, the claimant was an employee at a filling station and was peculiarly susceptible to frostbite on account of the sensitiveness of his feet due to previous freezing. He was compelled to work in the cold continuously for a long period of time in servicing cars. Compensation award was affirmed on the principal ground that the claimant's hazard was different from that of people generally who happened to be out of doors in that locality.

In *Larke v. John Hancock Mutual Life Ins. Co.*, 90 Conn. 303, 97 A. 320, the employee was a traveling representative of an insurance company and suffered a frozen nose while traveling fifteen or twenty miles on "an unusually cold day." His business required him to visit definite persons and places at definite times, irrespective of weather conditions. The Connecticut statute did not contain the word "accident" but only the words "personal injury." The court said, however, that even if the term "personal injury" be given its narrowest construction and confined to injuries of accidental origin, it would include "any form of bodily harm or incapacity, whether arising by direct contact, or lesion caused by external violence or physical force, or *untoward mishap*." (Italics supplied.) Award was upheld on the ground that the claimant was subjected to "unusual exposure" "due to his employment" and that "the weather caused a frostbite."

In *Gibbons v. United Electric Railways Co.*, 48 R. I. 353, 138 A. 175, the claimant was employed in shoveling snow from the car tracks and while working continuously for twenty-four hours his toes were frostbitten. The Rhode Island court held that the injury was an accident, saying that the word "accident" should be construed in its "popular and ordinary sense of an unlooked-for mishap, an untoward event, which is not designed or expected and being unexpected has in it an element of suddenness." The award was upheld on the ground that while cold is one of the forces of nature to the effect of which all are exposed, the claimant's exposure for such a long period was a special condition which produced his injury.

In *Days v. S. Trimmer & Sons, Inc.*, 176 App. Div. 124, 162 N. Y. Supp. 603, the claimant was employed as a helper in delivering coal to retail customers. His fingers and toes were frostbitten while delivering coal on "a very cold and stormy day." The New York court held that the injury was accidental.

The *John McManaman's Case*, 224 Mass. 554, 113 N. E. 287, is

one of the earlier cases frequently cited. The claimant was a long-shoreman and froze his fingers while unloading a steamer when the temperature stood at four degrees below zero. The court said that he was exposed to "materially greater danger and likelihood of getting frozen than the ordinary person or outdoor worker on the date in question" and upheld an award.

In *State, ex rel. Virginia and R. L. Co., v. District Court,* 138 Minn. 131, 164 N. W. 585, the claimant froze his thumb while cutting and handling timber in the snow when "the weather was severely cold." The award was upheld, the Minnesota court stressing the fact that the employee had no facilities for warming himself, that the building of fires was not permitted, and that his work "subjected him to a risk of freezing not shared by the generality of the community." Numerous cases were cited in support of the finding that the injury was an accident arising out of the employment.

In *Gates v. Central City Ass'n,* 107 Colo. 93, 108 P. 2d 880, the employee was an artist and froze his fingers while painting murals in an arcade which was open at both ends, permitting the cold wind to sweep through. The claimant had desired to do the work in the spring but the employer insisted that it be completed in the fall. In upholding recovery the court stressed the fact that the artist had no option as to where and when he would work and that he was subjected to an exposure not common to people of the community ordinarily engaged in doing outdoor work in cold weather.

A case quite similar to the one before us is *State, ex rel. Nelson, v. District Court,* 138 Minn. 260, 164 N. W. 917. The employee was a janitor ordinarily performing the usual inside work of a janitor. He was injured from freezing while shoveling deep snow when "the weather was very cold." The Minnesota court said—after reviewing various authorities—that "the trial court was justified in finding that to an appreciable extent the relator was more exposed to the risk of injury from freezing than the generality of workers, and that the added risk was because of the character of his employment."

(In support of a view contrary to what has been said, *supra,* see L. R. A. 1916A, 347; 28 R. C. L. 806, 808.)

We come to our Kansas cases. Appellants cite three of them, relying principally upon *Wright v. Keith,* 136 Kan. 393, 15 P. 2d 429. Syllabus 2 reads: "The freezing of a diseased foot of a work-

man while working in the mud and slush of a wheat field in erecting an oil-well derrick on a mild December day, where the minimum temperature was 28 degrees, lacks the elements of an accidental injury to make it a compensable injury under the compensation statute." In the body of the opinion it was said: "The climate and soil conditions under which the claimant was working at that time were not peculiar to the oil industry, but were in all respects similar to what any outdoor workman might expect to encounter at that time of year and in that vicinity." Attention was also called to the fact that the claimant was not an amateur at the business, having followed such work for twenty-two years in all kinds of weather. A number of cases, including some of those cited, *supra*, were reviewed and attention called to the fact that in most cases where recovery had been permitted there were unusual and unexpected climatic changes or conditions. The opinion stressed the fact that the temperature was quite normal in the case being considered, with no accompanying circumstances in any way out of the ordinary. No "untoward or unexpected event" had occurred.

A second Kansas case to which appellants call our attention is *Hoag v. Laundry Co.*, 113 Kan. 513, 215 Pac. 295. In that case an engineer was overcome by heat while cleaning engine boilers in the regular course of his work. The heat reduced his physical resistance, he contracted pneumonia and died. Compensation was denied on the ground that death did not result from personal injury by accident. However, it was said in the opinion that although the workman was an engineer of experience and knew about the heat of boilers that "what happened to him was unexpected, and *if what happened had been an identifiable injury then occurring, the event could have been described as personal injury by accident.*" It was also stated in the opinion that "It is now generally recognized that what is known as heat stroke is an accident within the meaning of compensation laws and *frostbite has been placed in the same category.*" (p. 515.) (Italics supplied.)

The third case cited by appellants is *El Dorado Refining Co. v. U. S. Fidelity & Guaranty Co.*, 157 Kan. 198, 139 P. 2d 369, in which the Wright case, *supra*, was noted with approval. The case is not helpful to appellants. It involved an injury alleged to have been caused over a course of years by inhaling poisonous gases incident to the operation of an oil refinery where the claimant was employed. Plainly the alleged injury was an occupational disease,

which we have frequently held is not covered by our compensation act.

Some Kansas cases more or less in point in which recovery was permitted may now be noted.

*Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658, was a case in which a workman employed to haul ashes became overheated, drank ice water, and suffered a fatal congestion of the vascular system.

*Mathis v. Ash Grove L. and P. C. Co.*, 127 Kan. 93, 272 Pac. 183. A workman at a cement plant was required to go back and forth between two quarries connected with a three-steel-rail railroad in order to keep the fires going under the boilers. He was killed by lightning while walking on the railroad, which was located near high-power electric lines. The issue was raised by demurrer, and this court held that there was a prima facie showing that the claimant was injured "by an accident arising out of and in the course of his employment."

*Davis v. Packing Co.*, 101 Kan. 769, 168 Pac. 1111. It was contended that the claimant died as a result of his foot being frozen while at work in a packing house. Although a judgment in his favor was reversed, it was on the ground that there was "no evidence on which to base the conclusion that the foot was frozen while at work in the packing house."

In *Chop v. Swift & Co.*, 118 Kan. 35, 233 Pac. 800, the claimant was employed in a packing plant in carrying links of cold sausage from one part of the plant to another. In carrying them she draped them on her arm. The sausages were very cold and the temperature of the room was low. After some time she suffered disability in the arm said to have been caused by the exposure. It was held that the injury could not have been regarded as accidental. The case is readily distinguished from the instant one. There was no unexpected circumstance. There was nothing unusual about the conditions in which the employee worked.

Similar to *Chop v. Swift & Co.*, and equally distinguishable from the instant one, is the case of *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516. In that case the employee worked in and out of a meat cooling room, the temperature inside being cold and that outside being hot. His disability was alleged to have been caused by exposure to the alternating heat and cold. Again there was nothing unusual in the conditions or circumstances under which he worked and it was held that his affliction did not arise from an accident.

The rule is firmly established that the Workmen's Compensation Act is to be liberally construed. (*Chamberlain v. Bowersock Mills & Power Co.*, 150 Kan. 934, 96 P. 2d 684.) In line with that rule we have in numerous cases broadly construed the words "by accident." An important aspect of such an issue was considered in the recent case of *Peterson v. Safeway Stores;* ante, p. 271, 146 P. 2d 657. We there held again, following the leading case of *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, that injury by a strain sustained in the performance of usual tasks performed in the usual manner may constitute an "accident," even though there be no event in the nature of an outside and intervening cause.

The instant case may be readily distinguished from *Wright v. Keith, supra.* In that case the temperature was thirty-nine degrees above zero part of the day and the lowest temperature was twenty-eight. The day was properly described in the opinion as "a mild December day." The claimant was thoroughly used to the kind of work he was doing, having been doing it for twenty-two years. There were no unusual climatic conditions. There were no sudden changes of temperature.

We think the instant case is also consistent with *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542. In that case the workman was employed to gather waste paper and trash from the alleys of a town built and maintained by an oil company for its employees. He was provided with a team and wagon. When a rain and windstorm came up he led the team to the side of a garage and while he was standing there the wind blew the garage over and he suffered severe injuries. Compensation was denied on the ground that the injury did not "arise out of" the employment. In the opinion it was said:

"When the injury occurs from the elements, as from lightning, cyclone, or the like, the majority of the cases hold, and the better reasoning is, that under statutes like ours . . . there is no liability unless the employment in some specific way reasonably can be said to have increased the workman's hazard to such element," and that there can be no recovery "unless some causal connection is shown between the employment and the injury caused by the elements." (p. 201.)

Clearly the hazard of the falling garage was not an incident which had any causal connection with the employment.

In the instant case the weather was mild on January 24, the day appellee was hired. That night a cold wave came—described by the commissioner, perhaps inaccurately, as a "blizzard." On the morn-

ing of the 25th—the day appellee went to work—the temperature was 5 degrees above zero. The temperature at sunset was 18 above zero, and the mean temperature for the day was 12½ above zero. It was an unusual and extremely cold day for that locality. Appellee, a man sixty-six years old, was unaccustomed to outside work. He was hired in connection with construction of an army air base vitally related to the war emergency. He worked in the intense cold from eight-thirty to five-thirty with only a half hour off at noon. He wore two pairs of gloves—a pair of jersey gloves and a new pair of leather gloves over them. The ground was frozen six or eight inches down and required the use of a pick. It was so cold that appellee did not have his gloves off even during the half hour at noon. Unlike the situation in the Rush case, *supra,* appellee's employment in such extreme and unusual weather, with no fire and no fuel for making a fire provided so that the workmen might occasionally warm themselves, did "increase the workman's hazard to such element." A causal connection between the employment and the injury from freezing is apparent. And there was ample medical testimony to connect the frostbite and the work appellee was doing. Upon these facts the commissioner and the trial court found that appellee suffered personal injury by accident arising out of and in the course of his employment. We cannot say, as a matter of law, that such a finding was erroneous.

The judgment is affirmed.