No. 28,863.

JANE WILLIAMS, *Appellant,* v. A. G. WILSON, *Appellee.*

(282 Pac. 574.)

Opinion filed December 7, 1929.

*John J. Riling* and *Edward T. Riling,* both of Lawrence, for the appellant.

*W. L. Wood,* of Kansas City, and *Paul C. Sprinkle,* of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This appeal is by the plaintiff in a compensation case from the ruling approving the finding of an advisory jury, and from the judgment rendered on such finding in favor of the defendant. Practically the only question here for review is whether there was any evidence to support the finding. Two questions were submitted to the jury, but only one was answered, because the second was made contingent upon the answer to the first being different from what it was.

The question submitted to the jury was, "Did the plaintiff receive an accidental personal injury arising out of and in the course of her employment?" The answer given by the jury was "No." The court approved this finding, and after overruling the motion of

the plaintiff for judgment on the award and evidence and the motion for a new trial, sustained the motion of the defendant for judgment on the finding of the jury.

A feature of this case was here before, after the matter had been submitted to an arbitrator and he had made and filed his award. The question arose in district court as to the right to a trial on questions of law and fact other than those submitted to the arbitrator. It was held in *Williams v. Wilson*, 124 Kan. 331, 259 Pac. 702, a trial as to such questions should be afforded. When the trial was held it was stipulated that "the only matter to be submitted is the question of whether or not there is an injury and whether it was occasioned by accident, and whether it arose out of and in the course of employment."

There were only four witnesses, the plaintiff, who related the incident of the injury and the matters leading up to it, and three physicians who, having examined the plaintiff, testified as to her physical condition and gave their opinions as to the origin or cause of her present condition.

The plaintiff was a married woman forty-seven years old, had never been sick before, and never before had any trouble with her heart. She had been working in defendant's steam laundry at Lawrence for about a year under his employment and about six months more under his predecessor. She had performed different duties, but for three months prior to the injury she had been carrying or dragging, in a large basket, wet clothes from wringer to the mangle, where she put them through the mangle. She usually dragged the basket on the floor the short distance, unless another person was near by who would carry one end of the basket for her. On the 8th of February, 1926, about three p. m., after she had dragged a basket full of clothes to the mangle and had stooped to pick up, and had picked up, an article to put into the mangle, her heart "just went like that and just has been that way ever since, just went all at once." "She can hear her heart beat." "Just beats awfully hard." "She has smothering spells, can't breathe and has to sit down and rest." She did not faint or fall, but after a few moments went on with her work until six o'clock that evening, but has not been able to resume her work there or do any work at home that requires any exertion.

The three physicians examined all agree that her heart is in a very serious condition, but they widely differ as to the nature and

character of the present trouble and still more so in their opinions as to the probable origin or cause of the trouble. Their testimony as experts covers fifty-nine pages of the abstract and counter abstract, wherein the learned counsel on both sides vie with them in apparent familiarity with the technical and professional terms used by the physicians as to the numerous parts, functions and possible ailments and defective operation of the heart. It can serve no good purpose to attempt to analyze and set out the different views and opinions expressed by the physicians, except to note briefly that one view was that the plaintiff had a plain case of mitral regurgitation, that it could be produced by making a great effort, by overexertion, and could occur suddenly or accidentally, especially with one having a previous record of good health, followed by a great depression, and a tumultuous heart with a pulse extremely irregular. The other view expressed by some of the physicians was that plaintiff had auricular fibrillation, which may be due to organic disease of the heart muscles, or to so-called functional disturbances; if she had a normal heart to start with, it would be quite out of the question for the condition of her heart to be the result of lifting or dragging a basket as detailed by her. The sudden onset was only a coincident, but the existing condition must have been from a functional disorder; also, the inhaling of chlorine gas from day to day, unless highly concentrated, would hardly cause a sudden trouble with the heart. Each view was supported by reasons, explanations, incidents and authorities, and each witness gave his reasons why the other view was not sound. There was evidence of the laundry being filled with chlorine gas most of the time, but there is no question here of an occupational disease. It has to do only, like the dragging and lifting of the basket, with the question of original cause of the sudden failure of plaintiff's heart.

It is strongly urged by the appellant that the second theory above noted, wherein the attack suffered by her was said to be due to functional disturbances, is inconsistent with the evidence of all the witnesses. She said she never before had any heart trouble and the physicians found no functional disturbance. It is argued that since they found none there was none, but two of them stated they did not undertake to make a complete examination for such purpose but adhered to their view that there must be such, but in the limited examination made by them they had not located it.

Appellant urges that the sudden and undesigned nature of the

attack of illness necessarily makes the injury experienced accidental within the meaning given by the courts to that term, and that if the question had been separated, the answer would necessarily have been in the affirmative as to that part of the question. Perhaps so, but it was not separated and the answer to the combined question was in the negative. It is further argued that since she was in the actual and immediate performance of her usual duties, the remainder of the question must of course be concluded in the affirmative. The second part of the combined question is not concluded by facts as to time and place. Many events might take place while one is strictly performing his prescribed duty which could not be said to arise out of and in the course of the employment.

Appellant cites the case of *Riggs v. Ash Grove L. & P. C. Co.*, 127 Kan. 91, 272 Pac. 153, as one of close analogy, where the laborer inhaled cement dust and gases for years and the muscles of his heart became weakened so that the heart gave way when he overexerted himself by climbing a ladder as part of his duty; also, the case of the man who suddenly had a profuse hemorrhage of the lungs when engaged at his usual duty in the lead and zinc mine (*Stringer v. Mining Co.*, 114 Kan. 716, 220 Pac. 168); also, the case of the employee of the zinc company who drank ice water when he was very warm while hauling ashes (*Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658); also, the case of the workman in good health who used a sixteen-pound sledge to break rock, and suddenly had a hemorrhage from which he died in a few minutes (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793)—all of which and other cases cited would support and sustain a finding in this case for the plaintiff on the conflicting evidence before us, but they cannot compel a reversal of the trial court based upon a finding of fact where the evidence is conflicting. The duty of the reviewing court is limited in such a case to the one question of determining whether there is any evidence to support the finding. There is no dispute as to facts stated by the appellant herself, but there are two quite distinct and divergent views as to the nature of the heart trouble and attack, as well as its origin and cause. Both views are sufficiently strong and reasonable to justify a finding either way, and therefore sufficient to support the finding of a negative answer to the question propounded.

"Rule followed that the determination of the preponderance of conflicting evidence is the function of the trial court, not that of the supreme court on

appeal." (*Bortnick v. Cudahy Packing Co.,* 119 Kan. 864, syl. ¶ 2, 241 Pac. 442.)

"In an action by an employee to recover under the workmen's compensation law, a general finding of the court in favor of the defendant is conclusive in the supreme court where there was evidence which tended to prove that the plaintiff had not been injured." (*Nealey v. Wyandotte Elevator Co.,* 123 Kan. 189, syl., 254 Pac. 377. See, also, *Hoover v. Hoover's Estate,* 104 Kan. 635, 180 Pac. 275; *Davis v. Hibbens,* 113 Kan. 121, 213 Pac. 661.)

Appellant insists that the instructions given by the court to the jury defining the term "accidental" were not in harmony with the definitions approved by this court in cases cited, but neither party to this action is in a position to complain of the instructions given for the reason that a jury was not demanded under the statute, and the jury was only an advisory one whose finding could be either approved or disregarded by the court, and therefore errors in giving instructions are not material nor grounds for reversal.

"Under section 20 of chapter 226 of the Laws of 1917, an act providing for compensation for persons injured in certain industries, the parties to an action for compensation waive the right to a trial by jury where they fail to demand a jury trial within ten days after the issues are joined; but the court may then call a jury to make special findings of fact, and it is not error for the court to refuse to instruct the jury nor to require it to return a general verdict." (*Zwaduk v. Morris & Co.,* 109 Kan. 186, syl. ¶ 1, 197 Pac. 868.)

The affidavits of three jurors were presented on the hearing of the motion for new trial showing their reasons for reaching the conclusion they did, which it may readily be conceded were not the best, but at most it could only be a mistaken notion or judgment as to the force and effect of certain facts and circumstances without any dishonest or improper motives whatever. Under these conditions and the several explanations made by them in such affidavits, we find no error in the overruling of the motion for new trial.

The judgment is affirmed.