No. 29,836.

WILLIAM S. BARKER, *Appellee,* v. THE SHELL PETROLEUM CORPORATION AND THE SOUTHERN SURETY COMPANY OF NEW YORK, *Appellants.*

(297 Pac. 418.)

Opinion filed April 11, 1931.

*Albert Faulconer, Kirke W. Dale* and *C. L. Swarts,* all of Arkansas City, for the appellants.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *William E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action under the workmen's compensation law involving the question of whether the workman sustained an injury by accident arising out of and in the course of his employment. Findings and an award were made by the compensation commissioner in favor of the workman and were approved on appeal to the district court, from which judgment the respondents, the employer and the insurance carrier appeal.

On the hearing before the examiner it was stipulated that the relation of employer and employee existed at the time of the alleged injury, that the parties were governed by the act, that the defendant surety company was the insurance carrier, that the average weekly wage of claimant was $22.60, that claim was made as required by law and that claimant is now totally and permanently disabled. The stipulation named the remaining two questions as being in issue—whether claimant met with an accidental injury arising out of and in the course of his employment, and whether notice was had by respondent of such accidental injury.

The claimant is the only one who testified as to what transpired, happened or took place with reference to the accident. There is no conflict as to the details of that occurrence, and appellants urge the point that, accepting the whole story as related by the claimant, it was not an accident as defined by this court and did not arise out of and in the course of his employment. This is a question of law and such as is within the jurisdiction of this court on appeal in compensation cases. This conclusion is in determination of a preliminary matter in the form of a motion filed by appellee to dismiss this appeal.

We find no merit in the contention of appellee to the effect that the main question above suggested is a question of fact, although

it is made up of facts. But where the facts are not disputed, it becomes a question of law, which is proper for the determination of this court on appeal, as has been held in *Coe v. Koontz*, 129 Kan. 581, 283 Pac. 487; *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818; *Conner v. Base Line Coal Co.*, 130 Kan. 504, 287 Pac. 585; and *Supica v. Armour & Co.*, 131 Kan. 756, 293 Pac. 483.

The claimant describes the incident as occurring between September 18 and 25, 1929, while riding a maney at the petroleum plant of the defendant, where he had worked for more than four years past. A maney is a large four-wheeled iron-frame slip, weighing about 2,500 pounds, and is used to pick up and convey dirt, its hind wheels being wider than its front ones. It is managed by a lever operated by one sitting on a seat on an extended iron bar. It, and another one in tandem form, was drawn on these occasions by a caterpillar engine. They were hauling coke from the coke pile, about 250 or 300 yards from where it was put, to fill up a low place. The ground between these two points was reasonably level, but they had to cross the industrial railroad track between the warehouse and the switch track, a distance of about 80 feet, where the ties of the railroad track would stick out where the switch runs, and the wheels of the maney would go over these ties and drop in between them and over the next one, jerking one up and down. It also had to cross the rails and go over some four-inch pipe where there was no planking. The maney would hit the ties nearly two-thirds of the time; once in a while he would pull through and never touch them. He said:

"I had no control over the direction the maney moved. George Williams drove the tractor. . . . He drove so the wheels of the maney got out over the ties and jerked me up and down and nearly jerked me to pieces. He would go along the track for 70 or 80 feet. As the maney would go over the ties and drop in between and over the next one, it would jerk you up and down, just like a wagon going over rocks or anything, jerk you here, jerk you to pieces. . . . It hurt my back clear from the back of my head clear to the small of my back. . . . Just so sore I couldn't hardly go, couldn't hardly stand it.

"Q. Immediately before you started to work on this maney, was your back sore? A. No, sir.

"Q. So far as you know there wasn't anything wrong with your back or spine? A. Never had been that I know.

"Q. When you first started to ride on this maney did your back hurt you the first day? A. It did before night.

"Q. Did it in the morning when you started out? A. No.

"Q. By night it was hurting you? A. Yes.

"Q. Did it hurt more or less on the second day? A. Kept getting worse.

"Q. How about the third day? A. It got so sore it was pretty hard to tell.

"Q. You mean by the evening of the first day it was almost to the height of its soreness? A. No, not the first day.

"Q. In the morning of the first day, it didn't hurt you at all? A. No, sir."

He commenced riding the maney in the morning of the 18th of September and ceased riding it on the 25th of September, not riding it, however, all the time but working at other things, and quit work for the company on the 2d day of October. Since riding the maney, he says, his back has hurt all the time, that he complained to his foreman that riding the maney was hurting his back. He told the foreman, Tom Kelly, and also Bill Donnelly that the maney was hurting his back. He is 64 years of age, and has been a laborer the most of his life. Was off duty from September 3 to 10; home sick with indigestion and neuralgia; had just a dull hurting through stomach and abdomen, no pain in back.

"Q. When you were riding the maney between the 18th and 25th, did you have any sharp pains of any kind? A. Jolting of it made me sore all over, right over my kidneys and the small of my back there, it felt like something going that way. (Illustrates with hands.)

"Q. Just contracting? A. Hurt so much, the misery was so I couldn't hardly stand it.

"Q. Did you have sharp, shooting pains, or just soreness? A. Just soreness.

"Q. Have you ever had a crick in your back? A. No, sir.

"Q. Did you ever have a sore or stiff back? A. No, sir.

"Q. Never did any time during your life? A. No. I had rheumatism in my arm in '23, you spoke of awhile ago.

"Q. Did you have pains, between the 18th and 25th, like you had when you had your rheumatism? A. No, sir."

The further undisputed record shows that he worked with the maney eight hours on the 18th, four hours on the 19th, six hours on the 21st and five hours on the 23d. The three doctors who testified all agree that his present trouble is arthritis, but they seriously disagree as to the origin of it and as to the effect of the jerking, shaking and jolting.

Appellants assemble from the definitions of an accident, as given in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, and *Echord*

*v. Rush*, 124 Kan. 521, 261 Pac. 820, and other decisions, the elements necessary to meet those requirements as (1) undesigned, (2) sudden, (3) unexpected, (4) usually of an afflictive or unfortunate character, (5) often accompanied by a manifestation of force, and (6) there must be a time, place or circumstance when the thing called an accident happened, took place or occurred, and further the personal injury caused by such accident must be something arising out of and in the course of the workman's employment.

Appellants reason from the testimony of claimant, as subjected to these required elements of an accident, that the incident as described by him lacks the required sudden nature because it was spread over a period of five days; that he did not discontinue his work until several days later, October 2; and that it lacks the sixth element as to time, place or circumstance when anything happened, took place or occurred. Appellants cite numerous cases where the injury was held not to have been an accident within the meaning of the term, among them, *Hoag v. Laundry Co.*, 113 Kan. 513, 215 Pac. 295, where an engineer cleaning his boiler was overcome by excessive heat, power of physical resistance reduced and died of pneumonia seven days later, and it was held not to have been an accident. The case of *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516, where a workman doing heavy lifting alternately between a very cold refrigerator car and outside where it was very hot, contracted a cold, had pains, quit before night and the second morning thereafter became paralyzed. The case of *Chop v. Swift & Co.*, 118 Kan. 35, 233 Pac. 800, where a woman in a packing plant carried very cold sausages from one part of the plant to another by draping them on her left arm, she first noticed a numbness, later what she thought was rheumatism was followed by paralysis, and the court held it was not an accident within the meaning theretofore given, and without giving a further definition thereof. In the case of *Williams v. Wilson*, 129 Kan. 215, 282 Pac. 574, a laundry woman dragged a basket of wet clothes to the mangle, had heart trouble but did not faint or fall and soon went on with her work, but now has smothering spells, has to sit down and rest.

Appellants cite the following cases where the injuries were held by the court to have been by accident within the meaning of the term, and arising out of and in the course of their employment:

In the case of *Blackburn v. Brick & Tile Co.*, 107 Kan. 722, 193 Pac. 351, where the workman caught his foot in a crank case and in

a struggle to release it fell on pieces of iron, became unconscious later, had pains in his neck and back and lost the use of his limbs, it was held the injury contributed to and aggravated a disease he already had and he was entitled to compensation.

The case of *Gilliland v. Zinc Co.*, 112 Kan. 39, 209 Pac. 658, was where one hauling ashes at a smelting plant became overheated, drank ice water causing congestion resulting in his death in an hour.

In the case of *Stark v. Wilson, Receiver*, 114 Kan. 459, 219 Pac. 507, a workman inhaling cement dust and gases for many years which affected his heart and lungs, was overtaxed in climbing a ladder, arteries failed to function and he died instantly.

Appellants close this last list, cited to show the distinction between those cases and the one at bar, with the case of *Monson v. Battelle*, 102 Kan. 208, 170 Pac. 801, where the workman at the car works waded through foul and impure flood water to the timekeeper's office. He had an old injury on one foot and an infection followed, requiring amputation, and it was there said:

"The statute relates only to injuries 'by accident arising, out of and in the course of employment.' (Gen. Stat. 1915, § 5896; Laws of 1917, ch. 226, § 27.) It is contended that the plaintiff's injury was not the result of an accident. The infection of an existing wound by contact with foreign matter seems to be within the ordinary meaning of the term—'an unlooked-for and untoward event which is not expected or designed.' . . . 'An injury may be by accident, although it would not have been sustained by a perfectly healthy individual.' (Corpus Juris Treatise, p. 69.) 'The courts very generally hold that if an existing disease is aggravated by accident or injury, compensation must be paid for the resulting injury.'" (p. 211.)

Before quoting the definition of an accident from the cases cited by both parties, let us summarize the facts in this case as above set out. While the work on the maney covered a period of several days, we need go no further than the first day for the purpose of time when the accident occurred, and not necessarily all of that day, for claimant said his back hurt him before night that first day. So the time was before night of the first day, September 18, 1929. The place was between the coke pile and the low place 250 or 300 yards from the coke pile. The jerking and jarring over the ends of the ties and the pipe and rails were undesigned and unexpected on his part. It, of course, was sudden or it would not be a jarring, jolting or jerking. The description he gives of the jolting brings it within the rule as to its being afflictive or unfortunate in character and accompanied with a manifestation

of force. It was compared with the jolting of a wagon driving over rocks or riding on a stalk cutter. It surely is not a question of pointing out the exact tie which caused the serious jolt, nor whether on the going or returning trip. Claimant says they didn't hit the ties every trip, but only about two-thirds of the trips. Never had any pain in his back before that day, but it commenced that day, September 18, and has continued ever since. The recurrence or repetition of the jarring and jolting incidents does not detract from the accidental character thereof, and nothing can be successfully urged as to the injury, if any, from this severe jarring and jolting experience on the maney, arising out of and in the course of his employment.

The decision in *Echord v. Rush*, 124 Kan. 521, 261 Pac. 820, refers to the definition of the word "accident" as being that given in the case of *Gilliland v. Cement Co.*, supra, which has regularly been followed since, and then applies that definition to the facts in the case on review, which called for special consideration of the points as to time, place and circumstances of the occurrence, it being a case of gradual poisoning from inhaling from day to day poisonous gases accumulating in the mine.

The definition of accident in the case of *Gilliland v. Cement Co.*, supra, was applied to a case where the workman had been in the sacking department of a cement plant, a very dusty place, for three years, but for the last few months had been breaking rock for loading on cars by using a 16-pound sledge, which was hard work. He had been using this sledge shortly before he was observed to be bleeding profusely from mouth and nostrils, which shortly resulted in his death, and it was held to be an injury by accident and one arising out of the employment. The definition and application thereof follow:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force. The word undesigned must not be taken too literally in this connection, because a person may suffer injury accidental to him, under circumstances which include the design of another. The same warning may be extended regarding other elements of the definition; but as definitions go, the one here proposed is correct, at least for present purposes. In this instance all the characteristics of an accident were present. The

occurrence was sudden, unexpected, and undesigned by the workman. While no one saw the workman strike a blow with his heavy sledge, or lift a heavy piece of rock the moment before the hemorrhage occurred, the circumstances were clearly such that the jury would have been authorized to relate the hemorrhage to blood pressure intensified by vigorous muscular exertion. Relating the hemorrhage to physical exertion, rupture to the pulmonary blood vessel by force from within was distinctly traumatic as if the canal had been severed by the violent application of a sharp instrument from without. There ·was no direct evidence of extraordinary exertion suddenly displayed. When last observed, the deceased was working in the manner habitual to the employment. The fact remains, however, that an extraordinary and unforeseen thing suddenly and unpremeditatedly occurred, and presence of all the essential attributes of accident cannot be gainsaid.

"The defendant insists a sharp distinction must be made between injury as one thing, and accident producing it as another. Some courts have made this distinction, have confined casualty to antecedent cause alone, and have held that compensation may not be made for injury resulting from the intentional performance of usual acts in the usual way. The question arose in England under the compensation act, the words of which were adopted by our own legislature in 1911: 'Personal injury by accident arising out of and in the course of employment.'

"In the case of *Fenton v. Thorley & Co.*, Limited, Appeal Cases [1903], page 443, the House of Lords considered and disposed of the question. A workman employed to turn the wheel of a machine felt something which he described as 'a tear in his inside,' and examination disclosed a rupture. There was no evidence of any slip or wrench or sudden jerk. The injury occurred while the man was engaged in his ordinary work, and in doing, or trying to do, the very thing he aimed to accomplish. The quoted provision was interpreted in the light of the manifestly beneficial and remedial purpose of the compensation act. The ordinary and popular meaning of the word accident as denoting mishap or untoward event not expected or designed, was accepted and applied, and it was held the expression 'injury by accident' meant simply accidental injury or accident in the popular sense.
. . .

"The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort." (pp. 773, 777.)

In the case at bar the incident was an untoward event, not expected or designed by the workman, each and every jolt and jerking was sudden and unexpected, painful, afflictive and accompanied with force. In the case last above cited, it was not the last blow or any particular blow with the sledge that caused the injury. The court said it was "aggravated by vigorous muscular effort."

The injury in this case was the result of the severe successive jolts received on the first day of riding the maney.

It was said in the case of *Raffaghelle v. Russell,* 103 Kan. 849, 176 Pac. 640, that it would never do to say that a courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing.

As stated above, the physicians all agreed the present trouble with the complainant was arthritis of the spine, but they fail to agree as to the origin or cause of it, one holding it could be caused by the severe and sudden jolting and jerking described, the patient having no symptoms or indications of arthritis prior to the accident. The other two said it was due to infection, usually of long standing, and could not be the result of traumatism, or such severe jolting as described by the claimant, but all agreed that if arthritis from infection existed without symptoms or pain, severe jerking or jolting might aggravate that condition by producing pain and make the jerking and jarring a contributing factor to the present disability.

The compensation commissioner accepted this theory which was admitted by the physicians to be possible, but was not fully advocated by any of them. For this reason appellants contend it is contrary to the evidence and is not supported by the testimony. The physicians who supported the infection theory were unable to understand how it could be possible that the workman did not have severe pain long before the accident, and yet they were confronted with the evidence of the workman, his family and his physician that he did not have any pain prior to that day. It was not the theory of these physicians that jarring and jolting would ordinarily contribute to the development of this trouble and yet they admitted it might aggravate it. The commissioner was not required to accept the entire theory of any one physician or specialist, any more than the statements of facts given by any one witness where there is a conflict. We are not advised as to what the findings of fact of the district court were in this regard. We only know that the district court sustained and affirmed the order of the commissioner.

Assuming that the findings as made by the commissioner were affirmed in this particular, we see no error because many of the cases above cited plainly make accidental injuries compensable where the accident only serves to aggravate or accelerate an already existing disease. (*Monson v. Battelle,* supra; *Gilliland v. Cement*

*Co.,* supra; *Blackburn v. Brick & Tile Co.,* supra; and *Conner v. Base Line Coal Co.,* 130 Kan. 504, 287 Pac. 585.)

We conclude that the facts of the case show a personal injury by accident arising out of and in the course of the employment, which injury was sufficient to and did aggravate an existing condition resulting in the present disability. The matter of the additional hospital allowance naturally follows this conclusion.

The judgment is affirmed.

SLOAN, J., not participating.