No. 29,849.

O. A. ERTMAN, *Appellee,* v. THE CLEMENS COAL COMPANY, *Appellant.*

(297 Pac. 431.)

Opinion filed April 11, 1931.

*C. O. Pingry, P. E. Nulton* and *G. L. Stevenson,* all of Pittsburg, for the appellant.

*Sylvan Bruner,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is a workmen's compensation case governed by the statute in force in March, 1927 (R. S. 44-501 *et seq.*). Plaintiff's petition was in two counts: *First,* to set aside a release on the grounds of fraud which induced its execution; and, *second,* for compensation under the act. It was tried to the court, judgment was for plaintiff, and defendant has appealed.

Plaintiff was employed by defendant in a coal mine. Both parties were operating under the workmen's compensation act. On March 11, 1927, plaintiff, while working in the mine and pushing a car of coal out of his room, slipped and fell, striking his back near · his left hip on the point of a steel rail, causing an injury to his left hip and the sciatic nerve of the left hip, which caused him to have a disabling condition of traumatic sciatica of a permanent character, and also caused a rupture in the region of his navel, called an umbilical hernia, which was disabling and permanent in character, which injury is ascertainable by objective examination. Plaintiff reported his injury and made due demand for compensation. With respect to release relied upon by defendant the court found:

"The evidence shows that a release was obtained from the plaintiff, an injured workman under the compensation act, by one C. W. Moncrieff, an agent of the defendant employer; that said release was obtained from the injured plaintiff by said agent by willful fraud and misrepresentation of law and facts,

whereby said plaintiff was induced by said willful misrepresentation and fraud of said agent of the defendant to accept one hundred sixty-five ($165) dollars as the amount he was entitled to receive under the compensation law for his injury, when in fact, under the evidence, he was entitled, under the compensation law, to recover permanent partial disability due to the nature and extent of his injuries at the rate of six ($6) dollars per week for the balance of the eight (8) year period; and that the said one hundred sixty-five ($165) dollars was grossly inadequate for plaintiff's injuries.

"That the said fraudulent acts and misrepresentations of the agent of the defendant were willful and intended to mislead the plaintiff, both as to the amount the plaintiff was entitled to recover under the compensation law for his injuries and as to the nature and extent of his injuries, and amounted to an implied assertion of law and facts existing, which justified the conclusion of law expressed, and caused the said plaintiff, because of his ignorance of his rights under the compensation law and as to what said law provided for his recovery for his said injury, to rely upon the superior knowledge of the agent of the defendant employer, and to accept and act upon said willful misrepresentation of law and facts and to execute the release he now asks to have set aside."

The court further found that plaintiff was temporarily totally disabled for eleven weeks, and that he would be permanently partially disabled for the remainder of the eight-year period, and allowed compensation accordingly.

Appellant argues that the trial court erred in setting aside the release, that plaintiff failed to establish the burden of proof, and show that the release was obtained by fraud or misrepresentation, and that there was not any misrepresentation as a matter of law. The real question presented is whether there was evidence to sustain the findings of the court. We have no difficulty in finding sufficient evidence in the record to sustain the findings. When plaintiff was injured defendant's foreman called a taxi to take plaintiff to his home, where he was put to bed. Doctor Bogle treated him. He was in bed three weeks. When he made demand for compensation he was told to see C. W. Moncrieff, who was the adjuster for defendant's insurance carrier. He went to see Moncrieff on the 8th of April and was paid $45, which he was told was for three weeks' compensation, and was asked to come back in a couple of weeks. He went back about April 21. Moncrieff took him into his private office and asked how he was getting along. Plaintiff told him, "Not very well," and Moncrieff asked: "How long do you think it will be before you will be able to go back to work?" Plaintiff told him he did not know. Moncrieff then said:

"I have talked to Doctor Bogle, your doctor, and Doctor Bogle told me there was not a damned thing the matter with you and it didn't amount to nothing, and it will not last longer than six or eight weeks. Now I know all about the compensation law of Kansas. Under the compensation law you are entitled to receive $120 besides the $45 I have already paid you, and that is all the money you will receive in your case; that is what the law provides for."

Doctor Bogle was out of the city. Moncrieff said the coal company and the insurance company wanted to get small cases like this off the books. Plaintiff believed Moncrieff and relied on his representations. Moncrieff wrote out a release and also an affidavit for plaintiff to sign, but so manipulated them that plaintiff did not have an opportunity to read them. Plaintiff did sign them, however. Moncrieff took plaintiff to the bank, where he was paid $120. It developed that the release and instruments which plaintiff signed called for a payment at that time of $165. Moncrieff, false both to the plaintiff and to his employers, put the extra $45 in his pocket. It is not necessary to detail all the evidence bearing upon the matter. Doctor Bogle had not made the statement to Moncrieff which he recited to plaintiff. Plaintiff did not know the extent of his injuries, or how long he would be disabled, nor did he know the amount of compensation he was entitled to under the compensation law. Moncrieff falsely represented not only plaintiff's condition to him, but the amount plaintiff should be entitled to under the compensation law. That he did so with the purpose of deceiving plaintiff is clear. It was also clear that he thought plaintiff was ignorant of those matters and would rely upon him, and the plaintiff did so rely. Appellant cites many cases to the effect that fraud is never presumed, but must be established by clear and convincing evidence. There is no trouble with these authorities. It is argued that the evidence was not sufficiently strong to show fraud with that clearness which is required of evidence of this character. Whether the evidence reached that degree of certainty which required or justified the setting aside of the release is primarily a question for the trial court. (*Kemp v. Morris*, 126 Kan. 614, 617, 270 Pac. 582.) The trial court having found that fraud was established by the necessary proof, that finding will not be set aside unless it can be said there was not substantial evidence to support it. (*Williams v. Wilson*, 129 Kan. 215, 282 Pac. 574.) In this case the evidence to support the findings of the court is clearly sufficient.

Appellant argues that a misrepresentation on the question of law would justify the setting aside of the release only in those cases

where the other party was ignorant of his legal rights. (*Cramer v. Railways Co.*, 112 Kan. 298, 211 Pac. 118.) The evidence here clearly brings it within that rule.

Finally appellant contends that there was no offer to arbitrate, which, under the statute (R. S. 44-534) was a condition precedent to maintaining the action. The counter abstract discloses that defendant in open court admitted there had been an offer to arbitrate and that the same had been refused.

The judgment of the court below is affirmed.

SLOAN, J., not participating.