No. 30,458.

RAYMOND PAUL, *Appellee*, v. THE SKELLY OIL COMPANY, *Appellant*.

(7 P. 2d 73.)

Opinion filed January 30, 1932.

*W. P. Z. German, C. L. Swim,* both of Tulsa, Okla., and *Cliff V. Peery,* of Kansas City, Mo., for the appellant.

*L. J. Bond,* of El Dorado, for the appellee.

The opinion of the court was delivered by

SLOAN, J.: This is a proceeding by a workman under the workmen's compensation act. It was stipulated and agreed that the appellee was an employee of the appellant on January 15, 1931, and that the parties were operating under the provisions of the workmen's compensation act; that the average weekly wage of the ap-

pellee was $29.33; that written claim for compensation was given under date of March 15, 1931, and received by the appellant March 18, 1931; that the appellee had been in the employ of the appellant from May 17, 1924, to and including March 6, 1931.

It was contended before the commissioner and in the district court that the appellee did not receive an accidental injury arising out of and in the course of his employment, and that appellant did not have actual notice of the claimed accident until fifty-four days thereafter, and claimed it was prejudiced thereby.

The evidence tends to show that on the morning of January 15, 1931, the appellee and three other men were directed to move some office furniture from the office building to the refinery. The appellee, while helping to carry a steel desk down the steps of the office building, suffered a pain in the left knee and the leg gave way. The pain gradually diminished until it became a dull ache. He made no complaint to his fellow employees and continued with his work, delivering the furniture according to instructions. He then told Pat Creely, the foreman, that he had hurt his knee in moving the desk. He complained to his wife that evening, and home remedies were applied to the injured knee. He continued in his work—although bothered with pain in the knee which sometimes prevented him from sleeping—until March 6, 1931. In September, 1923, the knee in question was injured in an automobile accident and the appellee was in the hospital from September 16 until October 18, 1923. On March 5, 1931, he was examined by Dr. L. C. Murray. The doctor testified:

"At that time the lateral ligaments were relaxed, he had what you call fluid, the joint moved around any way, some anterior-posterior motion, but not a whole lot, mostly lateral, some fusion into the joint, some swelling, from fluid in the knee, some crepitation on the lateral portion of the knee, that is about all of the findings. . . . I think he had a recent injury on top of an old injury. . . . I think when he was carrying the desk he probably tore the lateral ligaments and made them completely give way."

On March 14, 1931, the appellee was examined by Dr. Charles Rombold, who testified:

"The knee also demonstrates a probable fracture with the fibula, which is the interior attachment of the ligament of the knee, they run from this point down to the head of the fibula, apparently they have been pulled loose from the fibula head. . . . The presence of some fluid suggested a recent injury."

On the hearing before the commissioner, Dr. A. E. Bence and Dr.

E. S. Edgerton were appointed to examine the appellee and each filed with the commissioner a report in writing. Among other things, Doctor Edgerton said:

"It is my opinion that this lack of stability constitutes a definite disability for heavy manual labor. The degree of disability I would estimate at about 50 per cent. This is permanent in my judgment until such time as this joint is operated for the repair of this condition. I believe that the proper operative procedures would remedy this condition and give him an entirely useful joint."

Doctor Bence, among other things, said:

"Therefore, taking into consideration that Doctor Murray did see this man on March 6 and at that time it showed evidences of having received a recent injury; taking into consideration that the man had worked practically continuously from his old injury in 1923 up to January 15, 1931; taking into consideration the amount of disturbance that I find present at this examination, further considering that the man had worked for the Skelly oil people for a considerable time before the alleged injury and had not been absent from work as the result of sickness or injury; and that he was engaged in heavy work, tasks which would strain a knee such as he has now, to the breaking point, I must conclude that even though the injury of 1923 may have contributed to the man's present condition it did not complete the rupture of the external lateral ligament, thereby making the knee unstable."

The commissioner found:

"In addition to the stipulations and agreements of the parties, the commissioner finds that the claimant did on January 15, 1931, sustain a personal injury by accident arising out of and in the course of employment with the respondent, and that respondent has not in any way been prejudiced by lack of proper notice of such accidental injury."

He further found that the claimant had suffered a 25 per cent permanent loss of the use of his left leg, and that he had at no time suffered a total loss. An award was made in favor of the appellee for 200 weeks' compensation at the rate of $4.40 per week, or a total of $880. An appeal was taken from the award to the district court of Butler county, Kansas. The court found generally for the appellee and entered a judgment against the appellant for compensation at the rate of $17.60 per week for a period of eighty weeks, beginning January 22, 1931.

It is the responsibility of the district court, under the compensation act, to find the facts. The jurisdiction of this court is limited to questions of law and we can only examine the evidence for the purpose of determining whether there was substantial evidence to sustain the judgment of the district court. (*Orendoc v. Kaw Steel*

*Construction Co.*, 131 Kan. 366, 291 Pac. 952; *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263.) A review of the evidence can lead to but one conclusion—that there was sufficient evidence to support the finding of the trial court that the appellee was accidentally injured in the course of his employment.

It is earnestly insisted by the appellant that recovery is barred because the appellee failed to give the statutory notice. The statute makes it a condition precedent to the bringing of the proceedings for compensation under the act that notice of the accident, stating the time and place and the particulars thereof, and the name and address of the person injured, be given to the employer within ten days after the accident. It is provided: "That want of notice or any defect therein shall not be a bar unless the employer prove that he has been prejudiced thereby." (R. S. 1931 Supp. 44-520.)

The appellee failed to give the ten-day notice. The evidence is somewhat conflicting as to whether the appellant was prejudiced in the failure to receive proper notice and afford it an opportunity to investigate the accident as well as the injury. The trial court, in the exercise of its jurisdiction, found as a fact from conflicting evidence that the appellant was not prejudiced by the failure of the appellee to give notice. This was a question of fact. It has been determined by the trial court and is binding on this court. (*Vassar v. Swift & Co.*, 106 Kan. 836, 189 Pac. 943; *Shmana v. Swift & Co.*, 113 Kan. 340, 214 Pac. 569.)

It is next contended by the appellant that the district court erred in the method adopted by it for computing compensation. In other words, the question is, does the statute, after the per cent of disability has been determined, require that this per cent be taken of the weekly wages or of the time fixed by the statute as a basis for compensation.

R. S. 1931 Supp. 44-510, among other things, provides:

"(14) For the loss of a leg, 60 per cent of the average weekly wages during 200 weeks.

. . : . . . . . . . . . . . . .

"(19) For the permanent partial loss of the use of a . . . leg . . . compensation shall be paid at sixty per cent (60%) of the average weekly wages, . . . during that proportion of the number of weeks in the foregoing schedule provided for loss of such . . . leg . . . which the partial loss thereof bears to the total loss of a . . . leg . . ."

Sixty per cent of the appellee's average weekly wages was $17.60.

The commissioner found that the appellee suffered a 25 per cent loss of the use of his left leg and allowed compensation at the rate of $4.40 per week for a period of 200 weeks. The court, in effect, found a 40 per cent permanent loss and entered judgment for $17.60 per week for a period of eighty weeks.

On this question the court in the case of *Hering v. San Ore Construction Co.*, 130 Kan. 70, 285 Pac. 592, fixed an allowance to the workman on the basis of the per cent of his weekly wages for the full time fixed by the statute, and in the case of *Orendoc v. Kaw Steel Construction Co.*, supra, the court approved and allowed the workman the full weekly compensation for the per cent of the time fixed by the statute.

The question here presented was not squarely presented to the court for decision, and we must now determine the proper construction to be placed upon the statute. The language of the statute is "during that proportion of the number of weeks in the foregoing schedule provided." This appears to make the time, rather than the wages, the basis upon which the per cent is taken. We therefore hold that where there is a permanent partial loss of the use of a leg compensation shall be paid at 60 per cent of the average weekly wages during that proportion of the number of weeks fixed by the statute which the partial loss bears to the total loss.

The district court required the appellant to provide a supersedeas bond in order to stay execution during the pendency of this appeal. This is assigned as error. This court has held that the order made by the district court on an appeal from the commissioner is a judgment within the meaning of R. S. 60-3101, and may be enforced by execution. (*Lenon v. Standard Oil Co.*, 134 Kan. 289, 5 P. 2d 853.) The workmen's compensation act provides a procedure for appeal from the district court to this court complete in itself. (*Ferguson v. Palmolive-Peet Co.*, 129 Kan. 516, 283 Pac. 508.) There is no provision, however, in the act with reference to a supersedeas bond. Since the judgment entered by the workmen's compensation act is enforceable by execution it necessarily follows that an appeal does not stay execution and that R. S. 60-3322 is controlling, and, in order to stay execution, a supersedeas bond must be given as provided by this statute.

The appellee has filed a cross appeal in which he contends that the court erred in fixing the disability at 40 per cent. The conten-

tion cannot be sustained. This was a question of fact to be determined by the trial court from all the evidence adduced, and its finding was supported by substantial evidence and will not be disturbed by this court.

The judgment of the district court is affirmed.