No. 30,343.

ELMER NORMAN, *Appellee*, v. THE CONSOLIDATED CEMENT
COMPANY et al., *Appellants*.

(8 P. 2d 401.)

Opinion filed
March 5, 1932.

*J. E. McFadden, O. Q. Claflin, Jr.,* both of Kansas City, *Henry M. Shughart*
and *Lowell R. Johnson,* both of Kansas City, Mo., for the appellants.

*Frederick G. Apt,* of Iola, for the appellee; *A. R. Enfield,* of Iola, of counsel.

The opinion of the court was delivered by

SLOAN, J.: This was a workmen's compensation case. The employer and insurer appeal.

The appellee on September 16, 1927, while in the employment of the appellant, The Consolidated Cement Company, received a bruise on his right leg slightly below the knee joint. He continued to work until September 26, at which time he was forced to quit on account of the condition of his knee. He made his claim against the employer, and on February 23, 1928, an award was made by the commissioner for fifty per cent loss of the use of the right leg, due to a stiff knee. The employer appealed from the decision of the commissioner to the district court of Allen county, and on April 14, 1928, the award of the commissioner was modified and increased to one hundred per cent loss of the use of the right leg. From the decision of the district court the employer and insurer appealed to this court, and it was held that this court had no authority to entertain the appeal. (*Norman v. Consolidated Cement Co.,* 127 Kan. 643, 274 Pac. 233.) The appellants paid under this award $15.15 per week for 118 weeks, until December 1, 1929, a total of $1,787.70. Later the insurance carrier made an application for a review and modification of the award made by the commissioner on February 23, 1928. The commissioner refused to hear the application, and

this court granted a writ directing that the application be heard. (*Consolidated Cement Co. v. Baker*, 129 Kan. 845, 284 Pac. 415.) In compliance with the order of this court the commissioner granted a hearing, which resulted in a finding that the appellee was not suffering from any disability as a result of the accident received on September 16, 1927. An appeal was taken from this finding of the commissioner to the district court of Allen county. The court found against the appellants, and the order made on this finding is here for review.

The evidence of the appellants' physician was to the effect that from his examination he found "a leg that was somewhat atrophied, slightly stiffened at the knee joint, no shortening, and some tenderness on motion; there was no ankylosis or no bony deformity." He further testified that this condition might come from the disuse of the leg, and that he was suffering a fifty per cent disability. Other evidence was adduced to the effect that the appellee, after his injury, had moved to a farm; that he walked with a cane; that he cultivated corn and did other work and chores about the farm.

At the close of the appellants' evidence the appellee asked the commissioner to appoint two disinterested doctors to make an examination. The commissioner appointed two physicians, who made the following report:

"There is no deformity of the knee joint, the right knee and calf measuring exactly the same as the left one. Seven inches above the right knee the thigh measures one and one-fourth inches smaller than the corresponding point on the left thigh. He tends to hold his right leg straight, but it can be bent at the knee about twenty-five to thirty degrees comfortably. When forced beyond that point he complains of pain. However, Doctor Mabie did bend the knee to nearly a right angle and six hours later there was no reaction from this, that is, no swelling or inflammation, but the man complained that it hurt him at the time. The right knee cap is perfectly movable and there is no thickening of the capsule and no clinical finding whatever of any disturbance in the articulation of the joints. The man complains of loss of pain sense, practically all over the right leg, and especially his right thigh and pelvis. It is obvious, of course, that such disturbance could not result from any abnormal condition around the knee. Both of his feet were somewhat cold and sweaty to the same degree.

. . . . . . . . . . . . . .

"It is our opinion that there is no reason why this knee joint could not function normally if the patient permitted it to do so; that his motion is voluntarily restricted; that any injury that he sustained is at this time entirely recovered, and he therefore has no disability as a result of it."

The appellee testified, in substance, that his leg was stiff; that it caused him continuous pain from the hip down; that he walked with a cane and that he used the leg as much as possible; that he had plowed corn, driven a corn planter, and done other work about the farm. His doctor testified that he had made an examination of the leg and that the measurements were not the same as the sound leg, and further:

"Q. How much is the motion limited to the right leg, injured leg, Doctor, in percentage, basing 100 per cent being full motion? A. Well, it's limited in its position approximately 75 per cent.

"Q. Of the motion. In your judgment is this injury a partial permanent injury? A. Let's see, what is the date of the original injury?

"Q. Sixteenth day of September, 1927. A. I'd say that it's a permanent injury.

"Q. Permanent partial injury to the leg? A. Yes, sir. I don't mean by that it won't improve slightly; there will be some improvement.

"Q. But there will always be a partial permanent injury there? A. There always will be unless he should take and have some orothopedic surgical treatment."

On this evidence the court entered a memorandum in which, among other things, the court said:

"The court finds from the evidence introduced that claimant is still suffering from his injury received on September 16, 1927, and that he has, as the evidence discloses, a permanent partial disability.

. "The court thereupon finds that the claimant is entitled to 60 per cent of the average weekly wage he was receiving in September, 1927; that the weekly wage was $25.25, and 60 per cent of that sum is $15.15.

"The court further finds that claimant is entitled to further payment of $15.15 per week covering the permanent partial loss as herein described, and that said $15.15 a week is to continue weekly, commencing March 15, 1931, with a like sum each week thereafter until said payments shall cover the period of 200 weeks from the date of the injury, September 16, 1927."

On these findings the court entered a judgment against the appellants for $999.90, to be paid in a lump sum, and $15.15 per week to continue weekly, commencing March 15, 1931, until the payment covered a total period of 200 weeks computed from the date of the injury.

It is the contention of the appellants, first, that the finding of the trial court is not supported by any evidence, and second, that the award is not supported by the findings of fact made by the trial court, and is contrary to law.

There is no merit in the first assignment of error. The trial court must determine the facts, and where there is substantial evidence supporting the court's finding it will not be disturbed by this court. (*Orendoc v. Kaw Steel Construction Co.*, 131 Kan. 366, 291 Pac. 952; *Shay v. Hill*, 133 Kan. 157, 299 Pac. 263.)

There is merit in the second assignment of error. There is no evidence that the appellee has permanently lost the use of his leg. The evidence is to the effect that there is a permanent partial loss of the use of the leg, and this is the finding of the trial court. Under such facts the compensation is sixty per cent of the average weekly wage not in excess of $18 per week during that portion of the number of weeks scheduled for total loss of a leg which the partial loss thereof bears to the total loss. (R. S. 1931 Supp. 44-510, ¶ 19.) It was therefore the duty of the trial court to find the per cent of the loss of the use of the leg and enter judgment for $15.15 per week for the same per cent of 200 weeks, taking into consideration, of course, the time for which the employee has been paid for total loss of the use of the leg. (*Paul v. Skelly Oil Co.*, ante, p. 636, 7 P. 2d 73.)

The judgment is reversed, and the court is directed to proceed with the case in accordance with the views herein expressed.