No. 31,882

EARL H. BUTLER, *Appellee,* v. WHITE EAGLE OIL REFINING COMPANY, *Appellant.*

(34 P. 2d 120.)

Opinion filed July 7, 1934.

*J. B. McKay*, of El Dorado, and *James P. Kem*, of Kansas City, Mo., for the appellant.

*Fred R. Vieux*, of Augusta, and *E. W. Grant*, of El Dorado, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an appeal from a decision of the district court in a compensation case. Earl H. Butler was an employee of the White Eagle Oil Refining Company, and in his claim represented he had suffered an injury on August 25, 1932, while moving a freight car heavily loaded with coke. He was using what is called a "car-walker," a kind of jack, or crowbar, used in moving cars. He represented that he jumped on the end of the handle to force it down. The teeth of the appliance did not catch, but slipped, with the result that he fell in a sitting position, his legs and feet spread as far apart as they could be. No one else saw the accident. After the accident he said he had a burning feeling of pain in his back, but he continued working throughout that day, which was Friday, also on Saturday and until Sunday noon, and did not tell anyone of the accident. He played ball on Sunday afternoon without complaint. He went to the plant on Monday, but did not feel like working. In the meantime he had consulted a doctor and he also told a foreman that Doctor Clark said he had lumbago. He did not work on Tuesday nor had he told the doctor or his foreman of the accident. On Tuesday evening the foreman came to see him and he suggested that the claimant should see an expert, advised him to consult Doctor Lutz. He saw that doctor the following Saturday and told him about the accident, the first time he had spoken of it to anyone.

While there was some contention that the accident did not happen, there is a stipulation that renders it unnecessary to consider that feature of the case. It is conceded that there is sufficient evidence to sustain the finding of accidental injury, and there is left for consideration by this court only the question as to extent of the disability and the amount of compensation due.

At the time of the hearing before the commission both claimant

and respondent agreed to try out a job of light work as recommended, and the matter was passed along for further hearing. Investigation showed that he returned to work under this arrangement and he was assigned to cleaning and grinding valves in a cool shop, where he could sit or stand, as he chose; that he worked two eight-hour shifts and also one of one and one-half hours on the third day. He then quit the work and went home, saying that his back hurt him. The examiner expressed the opinion that the claimant will not coöperate in any way so long as total compensation is paid. Since the time of the claimant's return to work and quitting work, regular wages have been paid to him. The commission found that the claimant had met with personal injury by accident arising out of and in the course of employment, resulting in temporary total disability for forty-five compensable weeks, for which he is entitled to compensation at the rate of $14.04 per week, being $631.80, which has been paid, and at the termination of permanent disability, he is entitled to compensation for partial disability of twenty-five per cent, for 370 compensable weeks, which should be paid at the rate of $3.51 per week until fully paid or until the further order of the commission.

An appeal was taken to the district court, the claimant contending that he was entitled to an award for total disability. The district court, on the evidence furnished, found that the award and findings of the commissioner should be set aside, that claimant was permanently disabled and should be awarded $14.04 per week, the same being sixty per cent of his wages for permanent disability.

After directing payment of a lump sum up to the time of the trial, and giving credit for the amount which had been paid by the respondent to the claimant, it was ordered that for the remaining 340 weeks the respondent should pay claimant $14.04 per week, payable weekly, as provided by the compensation law, subject to any further lawful orders that may be made in pursuance to law.

There was testimony tending to support the court in its order and judgment that the disability was permanent in character. There was also considerable evidence tending to show the injury was only partial and that there was some work which claimant might do with his hands, which reduced the disability to twenty-five per cent of the amount of the claim.

On an appeal to the district court that court had the power to review the evidence submitted and to give a final judgment, whether

the injury was total or partial. If evidence is shown tending to support the finding of the district court, it follows that it is binding on this court. We have no authority to settle' conflicts in the evidence. That is the function of the district court, and the only questions we have to settle or determine are questions of law arising on the record. As we have seen, it is admitted that the testimony of claimant shows that he suffered an accidental injury, and that question is not open to review here. We have only the question of the extent of the disability he sustained and the compensation due to him under the law. There being some testimony tending to support the theory of the claimant that he is totally disabled to obtain employment for manual labor and considerable testimony that he is only partially disabled, and the court having found in support of claimant's theory of permanent disability, it follows that it is binding on this court. Claimant was employed to perform manual labor and must seek employment on that basis. It has been decided that this court may not settle the facts in the case or do more than to determine whether there is evidence tending to support the findings of the district court. It has been decided that:

"This court may not review the evidence as the district court did, and determine the nature of the relation between the employer and the deceased. The function of this court is limited to determining if there was evidence, whether opposed or not, warranting a reasonable inference, although a contrary inference might reasonably be drawn, to sustain the judgment of the district court." (*Shay v. Hill,* 133 Kan. 157, 299 Pac. 263.)

In *Leamos v. Wilson & Co.,* 136 Kan. 613, 16 P. 2d 490, it was said:

"The rule is established by statute (R. S. 1931 Supp. 44-556) and the decisions of this court that the responsibility of determining the facts rests in the trial court, and this court is bound thereby, if there is any evidence from which a reasonable inference may be drawn to sustain the findings of the trial court. (*Shay v. Hill,* 133 Kan. 157, 299 Pac. 263; *Paul v. Skelly Oil Co.,* 134 Kan. 636, 7 P. 2d 73.) Under the rule thus established we are bound to accept as true the testimony most favorable to the appellee, and, if from this testimony a reasonable inference may be drawn which will sustain the findings of the trial court, it is the end of our jurisdiction." (p. 616.)

In *Fernandez v. Edgar Zinc Co.,* 138 Kan. 735, 27 P. 2d 239, the same rule was announced:

"The questions open to review in the appeal to this court are limited to those of law. On questions of fact determined by the district court, its findings are controlling in this court, if there is evidence to sustain them. We have seen that there is evidence from which a reasonable inference may be drawn

that lends support to the findings of the trial court. When that appears it practically closes the controversy and ends our jurisdiction." (p. 737.)

Aside from the testimony of the claimant that he was unable to do manual labor, there was the testimony of Doctor Rombold, who had examined the claimant and had some X-ray pictures made of him, and from the examination of the pictures he said it was his impression that there had possibly been a fracture of the posterior inferior articulations of the lumbar spine, of the third lumbar vertebra, and could easily cause the symptoms of which Mr. Butler complained in his office. That is the only time he ever saw claimant. He stated that in his opinion Butler was disabled about thirty-five per cent, and that the disability was permanent, that he wouldn't ever be able to perform hard manual labor. He gave some reasons why the condition spoken of might have been due either to unhealed fractures or to congenital deformities. He said the back condition of the claimant might result from the kind of a fall which he related. He further stated that if he were examining Butler as a prospective employee, he would not recommend him.

Doctor Clark examined the claimant the day following the accident and found he had pains we usually associate with lumbago. He testified, "I have treated him since his first visit to me. I think he could do light farm work, truck gardening; he could hoe half an hour and rest; he could do a watchman's job. He couldn't do sedentary jobs as he couldn't sit still long enough, and he couldn't do one job that called for repeated tasks, performing a certain task all of the time. He couldn't do continuous or exacting manual labor. I don't think he will ever be able to do hard labor without the same symptoms coming back."

The respondent introduced testimony of others which tended to show that the disability was only partial, and testimony of other employees that he did not make complaint of the accident, but told them he had lumbago.

Mr. Burford, the engineer, testified that he offered Mr. Butler work in the machine shop, regrinding valves. We thought it would be better for him to work than to stay at home.

Then there was a Doctor Bence, introduced by respondent, who told of an examination he had made and found tenderness over each side of the posterior spinous processes of the third lumbar vertebra, expressed by the patient when pressure was applied to those points. He also said that his examination revealed congenital anomalies of

the articulating processes of the fifth lumbar vertebra, and that was probably something he had had all his life and did not think it was a permanent disability, and that claimant had approximately twenty-five per cent disability. He said the pain complained of would suggest a strain; that the claimant is incapable of doing heavy manual labor at this time; that he can do things with his hands, such as repairing meters, something that he can do sitting down, where he would not be repeatedly on his feet. "I would not recommend this man to a prospective employer after having seen the X-rays. I do not think claimant would be able to perform manual labor in such a way as to secure and obtain employment if he went to some other company."

It may be said that the reason given by the claimant for not revealing the accident was that he might lose his job. He said: "I concealed my injury of August 25 from Doctor Clark because I felt that I would be relieved, that I would lose my job," and for the same reason he did not tell Mr. Burford, the safety engineer, of the accident. He was willing to accept the offer of the company to do light work in the shop, but after a little more than two days he felt obliged to give up the effort.

Butler testified that he was willing to do light work in an effort to build up and straighten his back, and the examiner asked the respondent if they were in a position to give this man that character of light work in an effort to build him up. They responded that they were, and the examiner then made an order that they do so at a certain wage, and under the agreement they were to try out this light work, and the test was made. The examiner suggested that in case he could not do this work and there was not an effort on the part of the respondent to let him take these rest periods, so that he could build up gradually, after the test was made he would set the case down for final hearing. It appears that the claimant returned to work and was assigned to cleaning and grinding small brass valves in a cool shop where he did work two eight-hour shifts, and one and one-half hours on the third day, when he quit the work, went home saying that his back hurt. The examiner was of the opinion that the claimant would not coöperate in any way so long as total compensation was regularly paid.

It thus appears that there was testimony which supported the district court's finding that the injury was total and permanent. Under the rules stated that finding is conclusive, as it affords a

reasonable inference which sustains the findings of the trial court. That, as has been determined, is the end of our jurisdiction.

The judgment is affirmed.