## No. 33,058

SYLOUS LEE SMITH, *Appellee*, v. THE CUDAHY PACKING COMPANY, *Appellant*.

(64 P. 2d 582)

Opinion filed January 23, 1937.

*C. H. Brooks, Howard T. Fleeson, Fred W. Aley, Carl G. Tebbe, Wayne Coulson* and *Paul R. Kitch,* all of Wichita, for the appellant.

*Ambrose Woodard,* of Wichita, for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a workmen's compensation case. The commission and the trial court found for claimant. The case comes here for review on contention of respondent, the claimant failed to sustain the burden of proof.

Under the compensation act it is the responsibility of the district court to find the facts. Whether the judgment is supported by sub-

stantial competent evidence is a question of law, as distinguished from a question of fact. (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70; *Paul v. Skelly Oil Co.*, 134 Kan. 636, 7 P. 2d 73; *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862; *Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103.) We shall therefore proceed at once to an examination of the evidence.

In the instant case claimant was employed by respondent as a cattle butcher. On the date of his injury, June 25, 1935, he was "dropping hides," a term applied in the trade to skinning cattle. He received a small cut, skin wound, about two centimeters in length, on the dorsal surface of his right forearm. He reported to the company doctor for treatment. The company doctor and nurse cleansed the cut and put an antiseptic and protective dressing on it. He was treated daily from June 25 to June 29, inclusive, on July 1, and released on July 2. The doctor testified the wound healed with first intention, and on July 2 it was well; there was no rawness about it, and no indication of any fungus growth or ringworm. Claimant continued to work each day until July 5.

Claimant in substance testified: that on July 5 the company nurse told him to leave work because of a ringworm on his right leg and advised him to get a private doctor at once; the nurse had made two applications of mercurochrome; prior to the cut on his arm he had nothing wrong with him; ten days later there were a lot of white bumps on his leg, containing water; they broke out further down and then, also, further up; he had not been in company with people who were broken out with ringworm; he had just gone from home to work; he was left-handed, used the knife in his left hand and dropped the wet hides on his right arm; he worked positions numbers 1 and 3. At position number 1 there were generally diseased cattle which had been turned down by the government; there was blood, dirt and filth on the hides; the bandage became saturated and, at times, came off; when he cut himself he had no bumps on his arm. When he quit July 5 he had the trouble on his leg and arm; he quit by reason of the infection on his leg.

Claimant also testified he had sustained a scratch on his right leg during the week of June 17. It forms no part of the judgment and hence requires no further notice.

Claimant's wife testified she knew of the breaking out on his body after the cut and that she never knew of any breaking out on his body before the cut.

The pertinent portion of the testimony of his private physician, Doctor Shippey, was in substance: He began treating claimant about July 1, and had studied his case thoroughly. The first time he saw claimant his leg was swollen twice its normal size; claimant has microsporons, which is a variety of fungus; there are hundreds of varieties of fungus disease; they have many different aspects, some fast, some slow; some involve a great deal of the surface of the body, some just a small amount; some molds are harmless, some are harmful; from the history given by claimant and from the rapidity with which it spread he considered the disease of claimant acute rather than chronic; at time of trial the disease was in its chronic stage; man or animal may have the disease. A hypothetical question was asked this doctor. The question and answer read:

"Q. Assuming this claimant worked at the packing house, and was working on cattle that had infection, marked condemned, and his work was a butcher, and in his work as a butcher he had to skin the hides from cattle; now assuming, Doctor, in skinning these hides from the cattle he cut himself on the arm; that he went to the clinic out there and they put some mercurochrome on it, wrapped gauze around it, one or two layers, that he went back to work and there continued the rest of the day to allow the skin, covered with blood and slime and what not, to rest upon that arm as he had been instructed, and then within a week or ten days he began to break out with what he termed as ringworm, or that infectious disease, do you think it is possible he could have become infected in that cut from allowing them hides to slip over there. A. He certainly could."

The only other medical testimony offered by claimant was that of Doctor Van Cleve, who specialized in dermatology. Claimant was first examined by him on July 31. A portion of his testimony in substance was: He made a diagnosis of infectious eczematoid dermatitis, which means an allergic infection, and in common terms is an infection of the skin; claimant at that time had an extensive eruption over the right arm, scaly, quite red; on his right leg, which was swollen half again its size, was an eruption which was scaly, red and had numerous infected papules; it was a skin infection; the infection was local and not systemic. This fungus may be had by man or animal and may be transferred from one to the other; it is possible for a man to get the infection by rubbing against an animal or person infected with the disease. A hypothetical question, answered by Doctor Van Cleve, was as follows:

"Q. Now, Doctor, if this claimant here received a cut on his right arm about a week or ten days prior to the time this first broke out, and was

handling cattle at that time, that was infected at the packing house, do you think it would be possible for him to receive an infection from the diseased cattle? A. It would be possible."

The trial court found:

"Claimant met with personal injury by accident arising out of and in the course of his employment on or about June 25, 1935, when claimant received a small punctured wound on the dorsal surface of the right forearm; that as a result of said accident claimant contracted a microsporon-dermatitis infection from diseased cattle, which infection resulted in ten and one-third compensable weeks temporary total disability."

Respondent contends the evidence does not support this finding. The nature of the claim was for an infection known as ringworm. The disease is infectious. It is true, there can be no recovery under the workmen's compensation act for disease alone. (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516; *Echord v. Rush*, 124 Kan. 521, 261 Pac. 820; *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418.)

That claimant suffered an accident, a cut on the arm, and that this accident arose out of and in the course of his employment is admitted. Respondent, however, contends the evidence only shows it was possible the accident caused the disease or contributed to the contracting of the disease. It is urged proof of possibility is insufficient, and that the evidence must at least show the disease was probably caused by the cut, or that the cut probably contributed to the contracting of the disease. In support of the contention we are directed to *Fair v. Golden Rule Refining Co.*, supra; *Zimmerman v. Weinroth*, 272 Pa. St. 537, 116 Atl. 510; *Mauchline v. State Ins. Fund et al.*, 279 Pa. St. 524, 124 Atl. 168; *McCoy v. Jones & Laughlin Steel Co.*, 275 Pa. St. 422, 119 Atl. 484; *Gausman v. Pearson Co.*, 284 Pa. 348, 131 Atl. 247; *Frank Marra Co. v. Norton*, 56 F. 2d 246.

The evidence most favorable to claimant disclosed he had no ringworm infection prior to the cut on his arm; there was nothing wrong with him prior thereto; he had not been in communication with any person who was infected with the disease; he had gone only from home to work; the hides of condemned cattle, which had some kind of infection, had been thrown over the cut arm; the bandage had become saturated with blood, dirt and filth from the hides; at times the bandage came off; and that it was certainly possible for him to have thus become infected with the disease.

The majority of the court regard this evidence as proof of more

than possibility the infection resulted from the wound. The evidence made certain the possibility of contracting the disease and practically eliminated every other source of infection than infection arising out of and in the course of employment.

Respondent calls attention to other testimony of claimant's own witness, Doctor Van Cleve, which testimony was unfavorable to claimant. That testimony dealt with the question of probability of the cut causing or contributing to the fungus infection. On review of findings of the trial court, it has been held, this court is concerned only with evidence which supports or tends to support the findings of the trial court or jury and does not consider evidence unfavorable to such findings. (*Shattuck v. Pickwick Stages Corp.*, 135 Kan. 602, 11 P. 2d 996; *Bergman v. Kansas City Public Ser. Co.*, 144 Kan. 27, 58 P. 2d 110.)

In view of this situation it follows the judgment must be affirmed. It is so ordered.

WEDELL, J. (dissenting): In due deference to the view of the majority I am unable to concur in this opinion. It is unsupported by any precedent I have been able to find and impresses me as unsound in reason. It must inevitably lead to resting judgments on uncertainty, conjecture and speculation. The question presented here is not whether the provisions of the workmen's compensation act shall be liberally interpreted in order to accomplish the beneficent purpose intended by its framers. In the rule of liberal interpretation I readily concur and would strenuously oppose any relaxation of it. The question before us does not pertain to an interpretation of the provisions of the act but goes to the probative force of evidence. The evidence which must be relied upon for recovery is medical. The nature of the claim was not for compensation due to an accident, namely, the cut on the arm. That such accident occurred respondent admits. The claim was for compensation due to infection from cattle which the evidence established to be a disease known as ringworm. The theory of claimant was the cut resulted in the infection. The finding of the court was that claimant contracted the infection as a result of the accident, the cut on the forearm.

In the interest of clarity of thought I shall first deal briefly with the question of the infection or disease, separate and apart from the accident, the cut. The theory that the judgment of the

trial court is supported by evidence because the evidence practically eliminated every other source of infection than that arising out of and in the course of employment is of no value in this particular case. The reason for that is, compensation for disability, resulting from disease alone, even industrial disease, is not recoverable under the workmen's compensation act. (*Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516; *Chop v. Swift & Co.*, 118 Kan. 35, 37, 233 Pac. 800; *Echord v. Rush*, 124 Kan. 521, 261 Pac. 820; *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70.)

Next, it should be borne in mind there can be no recovery in this case on the theory that the accident (the cut) contributed to, aggravated or precipitated any existing ailment or disease. Claimant's own evidence precludes recovery on that ground. He testified that prior to the cutting of his arm he had nothing wrong with him. The decision of the court, of course, does not rest upon this theory. I have simply disposed of the theory in order to avoid confusion of thought.

The undisputed testimony was: the cut on the arm healed with first intention; about a week or ten days after the cut on the arm an infection broke out on claimant's right leg; the infection was local and not systemic; by reason of the leg infection he stopped working.

Since the infection was purely local and not systemic, it did not pass through the blood stream. Let us now turn to the causal connection between the accident and the disease. If recovery is allowed, it must be on expert testimony, and on such portion of that testimony alone as is most favorable to claimant. The most favorable testimony of claimant's own witness, Doctor Van Cleve, the only skin specialist called, and a physician of wide experience with diseases of this nature, is found in the hypothetical question and answer:

"Q. Now, Doctor, if this claimant here received a cut on his right arm about a week or ten days prior to the time this first broke out, and was handling cattle at that time that was infected at the packing house, do you think *it would be possible* for him to receive an infection from the diseased cattle? A. It would be possible." (Italics inserted.)

On the subject of testimony "of possibility," this court, in *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862, said:

"Claimant relies on the fact that, as he testified, he was in good condition

before the accident and began to be sick soon after it. It will be seen that the only medical testimony that was furnished by claimant was that it was possible that an accident such as that described by claimant might have caused his condition. . . . Taking all the evidence in this case in its most favorable light for claimant and giving claimant the benefit of all inferences to be drawn from the proven and admitted facts, the conclusion to be drawn rises but little higher than surmise or conjecture. We cannot permit judgments to rest on such a basis." (pp. 317, 318.)

The most favorable testimony of claimant's own witness, Doctor Shippey, is found in answer to the long hypothetical question set out in the opinion. The statement of Doctor Shippey, "He certainly could," was in answer to the question whether, under the circumstances stated, *it was possible he could have become infected* in the cut. The answer is not that in his professional opinion claimant did become infected in the cut, nor that the infection, most probably, or even probably, resulted from the cut. Neither did he say, in his opinion, the cut most probably, or even probably, contributed to the contracting of the disease. The answer simply meant there was no question about the possibility of claimant's becoming infected in this manner. To construe the answer as meaning anything more certain than that, it appears to me, is to read into it something not expressed nor fairly implied. Clearly the answer does not import certainty nor even probability. Obviously, conditions arise where doctors, of necessity, are prevented from testifying with certainty and refuse to do so. This speaks well for their integrity. All that can be expected of them under such circumstances is their best professional judgment. Where, however, medical testimony must be relied upon to establish the connection between cause and result, the testimony should affirm probability and not mere possibility. Any other rule must result in the elimination of necessity for proof and in the rendition of judgments on speculation.

Doctor Shippey's judgment as to probability was not solicited. The reason for failure to solicit it may perhaps be found in the adverse testimony of Doctor Van Cleve on that subject, whose testimony had preceded that of Doctor Shippey. Furthermore, according to the undisputed evidence, the infection may have been transmitted by contact without any cut. There was no evidence the disease was more readily contracted by reason of an abrasion. As to the rapidity of the spreading of this particular kind of infection, the undisputed evidence was, that there was very little difference whether this infection came in contact with the blood stream or

not. In *Zimmerman v. Weinroth*, 272 Pa. 537, 116 Atl. 510, where disease was alleged to have resulted from personal injuries, it was held:

"Where it is equally probable that the disease resulted from two or more causes, for only one of which defendant was responsible, there can be no recovery." (Syl. ¶ 2.)

Certainly, whether the disease was in fact occasioned by the cut or whether it was contracted otherwise, in the course of employ· ment, was highly conjectural. In *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70, it was said:

"What we mean to hold is that before a claim for compensation can be sustained there must be substantial, competent evidence to support it. Claims cannot be sustained which rest purely on conjecture, or upon abstract theories not applicable to the facts." (p. 629.) See, also, *Whitaker v. Panhandle Eastern P. L. Co.*, supra, and cases there cited.

In *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516, the action was for compensation for alleged injuries sustained through exposure while working in and out of defendant's meat-cooling plant. In denying compensation, this court quoted with approval from *Linnane v. Aetna Brewing Co.*, 91 Conn. 158. The pertinent portion of the quotation reads:

" 'Compensation is not awarded, under our workmen's compensation act, for death or incapacity due to disease, unless the disease be the direct result or natural consequence of an accidental bodily injury; in other words, a "personal injury" within the act, must involve both an accident and bodily injury as distinguished from disease.' " (p. 437.)

In *Fink v. Sheldon Axle & Spring Co.*, 270 Pa. St. 476, 113 Atl. 666, with regard to medical testimony, it was said:

"Both the courts and the administrative authorities have, very properly, been most liberal in construing the Workmen's Compensation Law, holding that claims thereunder need not be made out with the same exactness of proof required in suits .at common law. It must be understood, however, that when, in cases of this class, expert testimony is relied on to show the connection between an alleged cause and a certain result, it is not enough for the doctors to say simply that the ailment in question might have resulted from the assigned cause, or that the one could have brought about the other; they must go further and testify at least that, taking into consideration all the attending data, it is their professional opinion the result in· question most probably came from the cause alleged." (p. 479.) See, also, *McCoy v. Jones & Laughlin Steel Co.*, 275 Pa. St. 422, 119 Atl. 484; *Gausman v. Pearson Co.*, 284 Pa. St. 348, 131 Atl. 247; *Frank Marra Co. v. Norton*, 56 F. 2d 246.

The evidence most favorable to claimant pertained to possibility

of connection between cause and result. That evidence did not meet the requirements of proof.

Moreover, it should be noted there was no evidence the cattle were infected with ringworm. In the hypothetical questions that fact appears to have been assumed. The record before us affords no basis for the assumption.

BURCH, C. J., and THIELE, J., join in this dissent.