No. 33,518

Tom Gallagher (Claimant), *Appellee*, v. Menges & Mange Construction Company, Respondent, et al., *Appellants*.

(72 P. 2d 79)

Opinion filed October 9, 1937.

*Arthur J. Stanley* and *J. E. Schroeder*, both of Kansas City, for the appellants; *Wm. H. McCamish*, of Kansas City, of counsel.

*A. M. Etchen*, of Kansas City, for the appellee.

The opinion of the court was delivered by

Wedell, J.: This was a proceeding for recovery of compensation under the workmen's compensation act. (Laws 1927, ch. 232, G. S. 1935, 44-510.) Claimant was granted an award by the commission, but appealed to the district court. He prevailed in that court and now respondent appeals. The sole question is the amount of compensation to which claimant is entitled.

Claimant sustained an injury to his left index finger on September 4, 1936, while using a wire cutter in cutting spread wires from a concrete wall. He did not lose the finger nor the total permanent use thereof. The schedule provides specific compensation for the loss of an index finger. It is sixty percent of the average weekly wages for thirty-seven weeks. (Sec. 10, 3c [2].) The permanent loss of use of a finger is equivalent to the loss thereof. (Sec. 10, 3c [19].) There was, however, evidence of permanent injury con-

sisting of temporary total, followed by permanent partial loss of use. The finger became infected and the infection partially involved the use of his hand. At the hearing before the examiner on February 8, 1937, it was agreed that the injury was compensable; the average weekly wage was $28; he had received sixty percent thereof, or $16.80 per week, and a total of $67.20 for four weeks.

We are, of course, concerned only with the judgment of the trial court. The court found claimant had suffered a temporary total loss of the use of his finger from September 4, 1936, to December 25, 1936, and for this loss allowed $16.80 per week for the period of fifteen weeks, amounting to $252. In computing the compensation for the permanent partial loss the trial court deducted the fifteen weeks from the maximum thirty-seven weeks fixed by the schedule and allowed fifty percent disability for the remaining twenty-two weeks in the sum of $184.80. From the total compensation thus allowed in the sum of $436.80, it deducted the sum of $67.20 previously paid, and rendered judgment for the balance in the sum of $369.60.

The respondent contends there is no *substantial* evidence to support the finding of a *fifteen-week* period of total disability nor a finding of *permanent* partial disability and that the schedule makes no provision for temporary loss of use. It is also urged the award was not properly made, even in conformity with the provisions for a scheduled injury. We shall treat the contentions in the order stated.

Does the evidence support the finding of temporary total loss of use for as long a period as fifteen weeks? The rule concerning review of evidence has been frequently stated. In the recent case of *Smith v. Cudahy Packing Co.*, 145 Kan. 36, 64 P. 2d 582, it was said:

"On review of findings of the trial court, it has been held this court is concerned only with evidence which supports or tends to support the findings of the trial court or jury and does not consider evidence unfavorable to such findings. (*Shattuck v. Pickwick Stages Corp.*, 135 Kan. 602, 11 P. 2d 996; *Bergman v. Kansas City Public Ser. Co.*, 144 Kan. 27, 58 P. 2d 110.)" (p. 40.)

Respondent is correct in its statement that the question of the existence of substantial evidence to support these findings is a question of law as distinguished from a question of fact. (*Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70.) It is not correct, however, in its statement that there was no credible testimony to support a finding of temporary total loss of use for fifteen weeks. The evidence on this point was conflicting. True, according to medi-

cal testimony the trial court would have been justified in finding that a subsequent infection which developed from a hair follicle on the same finger in November had no connection with the injury of September 4, and that claimant's finger was not totally disabled beyond October 16 as a result of the injury of September 4, but the trial court apparently did not give as much credence to that testimony as did respondent. The trial court had a right to disbelieve it in its entirety if it saw fit to do so. Moreover, claimant testified positively he first began to get any use of that finger about December 25. The trial court saw claimant, saw his finger and believed his statement. On what theory, then, can this court, which does not weigh evidence, or determine credibility of witnesses, reverse that finding of the trial court? Obviously none. Respondent directs our attention to the fact claimant had been employed at the same class of work on occasions between October 20, 1936, and the date of the hearing, on February 8, 1937. For aught the record discloses, claimant might have operated the wirecutter with his right hand and performed his work, in a fashion, although his left index finger had been entirely useless or amputated. The fact he worked did not deprive him of scheduled compensation for the loss of the use of a finger, if he in fact lost such use.

Touching next the question of permanent partial loss of use, we again find a conflict in the evidence. Here again we are obliged to consider only evidence which supports or tends to support the finding. Claimant's testimony disclosed Doctor Johnson, the company physician, had removed a splinter of bone, about one fourth of an inch in length, from his finger, and that claimant saw the splinter. Claimant, referring to the company doctor, stated: "Well, he took a pair of tweezers and pulled it out and said that it was a splinter of bone." The doctor denied having removed any bone. The hearing was held on February 8, 1937. The testimony of one doctor was to the effect that the injury was permanent but very slight. He did not fix the percent of permanent disability. The testimony of another doctor was to the effect there was about a fifty percent loss of use and that this disability would continue about five or six months. The percent of disability after the termination of five or six months from February 8, 1937, was not fixed. It may also be observed that the five-or-six-month period would extend the disability beyond the thirty-seven-week period provided by the schedule. There was evidence the end of the finger was narrower than it

was before. Doctor Feehan, a witness called by claimant, testified in part:

"Examination shows some atrophy of the distal soft parts of the left index finger; flexion of the terminal phalanx is limited twenty-five percent. Extension is complete, but hard the last five degrees. There is an apparent difference in the blood supply, the left index finger being mottled or bluish in color; there is a ridge across the nail in its midportion. There is a scar on the side of the terminal phalanx and a roughened scar between the metacarpal-phalange and the proximal interphalangeal joint. Motion in the proximal interphalangeal joint in flexion is slightly limited. There is a variation in the sensation immediately adjacent to the scar on the distal phalanx, cannot distinguish sharp and dull. In effort to make a fist the metacarpal-phalangeal joint does not completely flex, although passively this can be done."

In view of this record, we cannot say there was no substantial evidence of permanent partial loss of use.

Is such temporary total loss of use followed by permanent partial loss of use, compensable as a scheduled injury? Respondent says it is not, but concedes this court has held otherwise. (*Hering v. San Ore Construction Co.*, 130 Kan. 70, 285 Pac. 592; *Orendoc v. Kaw Steel Construction Co.*, 131 Kan. 366, 291 Pac. 952; *Paul v. Skelly Oil Co.*, 134 Kan. 636, 7 P. 2d 73.) Respondent respectfully contends this court was wrong in so holding, and that the compensation should have been determined as provided by section 10, 3c (22), or section 10, 3b. Our attention is directed to decisions from other jurisdictions where it is said a similar compensation law obtains. We have noted the decisions and concede the question is not entirely free from difficulty, but upon reconsideration we have arrived at the same conclusion reached in previous pronouncements on the subject. On the basis of the foregoing decisions, the injury was not only compensable as a scheduled injury, but the amount of compensation was correctly computed. (Sec. 10, 3-c, [2, 19].) (*Hering v. San Ore Construction Co.*, supra.) In the Hering case the injury was to a foot. The method of computing the compensation as a scheduled injury is there clearly set forth and it is not deemed necessary to repeat that analysis here. Respondent urges that inasmuch as the trial court found temporary total loss of use was followed by permanent partial loss of use, the first week should have been excluded. From September 4, 1936, to December 25, 1936, constitutes a period of sixteen weeks. Temporary total disability was allowed for only fifteen weeks. From what has been said it follows the judgment must be affirmed. It is so ordered.